**POLO FASHIONS, INC., et al.,
Plaintiffs-Appellees,**

v.

**STOCK BUYERS INTERNATIONAL, INC.; Columbus Business Systems, Inc.; Eugene Sergio and Morton Ladowitz, Defendants-Appellants,**

**Frank Edmunds, et al., Third Party Defendants.**

**No. 84–3332.**

United States Court of Appeals, Sixth Circuit.

Argued Feb. 21, 1985.

Decided April 26, 1985.

Rehearing Denied June 10, 1985.
Rehearing and Rehearing En Banc Denied June 17, 1985.

Mary Jane McFadden, Dublin, Ohio, Carl Genberg, argued, Genberg and Aucoin, Columbus, Ohio, for defendants-appellants.

Maryann B. Gall, Columbus, Ohio, Robert S. Groban, Jr., argued, Friedman and Shaftan, P.C., Milton Springout, Amster, Rothstein & Engelberg, New York City, for plaintiffs-appellees.

Before LIVELY, Chief Judge, ENGEL, Circuit Judge, and PECK, Senior Circuit Judge.

LIVELY, Chief Judge.

The defendants appeal from jury convictions of criminal contempt and the punishments imposed by the district court.

### I.

Polo Fashions, Inc. (Polo) filed suit in the district court on January 21, 1982, alleging that Stock Buyers International, Inc. (Stock Buyers), Columbus Business Systems, Inc. (CBS), and Eugene B. Sergio were engaged in activities that infringed Polo's registered trademarks. In its complaint Polo sought injunctive relief, an accounting, costs and attorney fees. On February 3, 1982 the district court entered an agreed preliminary injunction order.

On August 9, 1983 Polo moved the district court to issue civil and criminal contempt citations against the three defendants and Morton Ladowitz, an officer, director and shareholder of Stock Buyers.

Polo also requested that its attorneys be appointed to prosecute the criminal contempt charges. On August 24, 1983 the district court entered an order in which it determined that there was probable cause to believe that the defendants and Ladowitz willfully violated the terms of the agreed injunction, and that "the appointment of Polo's counsel to prosecute the criminal contempt will facilitate an expeditious resolution of these charges since Polo's counsel is fully familiar with this matter." The order, entered pursuant to Rule 42(b), Fed.R.Crim.P., appointed two New York City law firms together with Polo's counsel of record, a Columbus, Ohio attorney, to prosecute the criminal contempt charges. All appointees were attorneys for Polo.

The district court then signed and entered a statement of charges which had been prepared by Polo's counsel. The statement of charges was amended prior to hearing without objection. The defendants and Ladowitz pled not guilty to the charges and a trial date was set. (Hereafter Ladowitz is referred to as a defendant along with the three original defendants). The defendants made a motion to vacate the order appointing special counsel on the ground that appointed counsel were "too privately interested" to properly prosecute the case. The district court denied this motion, along with others filed by the defendants, but it granted the defendants' motion for trial by jury.

Trial of the contempt charges commenced on February 21, 1984 before the district judge and a jury. Two attorneys for Polo, one from Columbus and one from New York, appeared for the prosecution. No one from the office of the United States Attorney appeared in the proceedings. The jury found all four defendants guilty and the district court passed sentence on April 25, 1984. The individual defendants, Sergio and Ladowitz, were each sentenced to imprisonment for six months and fined $100,000, to be paid to Polo. The corporate defendants were jointly fined $100,000. All

defendants have appealed, and we reverse for a new trial.

## II.

The defendants have presented ten separate claims of reversible error. However, one assignment is dispositive. Therefore, we will not discuss those issues which are not likely to arise at a retrial or the many claims of error that are based on trial rulings which were made in the exercise of the trial judge's discretion and under different circumstances than will probably exist at a retrial. There are two claims of error other than the dispositive one which must be considered, however, as they would require dismissal rather than retrial if the court were to agree with the defendants.

### A.

■■■ The defendants argue that the injunction was too vague to be the basis of a contempt action. We disagree. The preliminary injunction was sufficiently clear and specific to provide the basis for criminal contempt proceedings. It was an agreed order and none of the original defendants ever objected to its terms, claimed they were unclear or sought a clarification prior to institution of contempt proceedings. The defendants acted at their own risk by failing to seek the court's interpretation of the injunction if they had any good faith doubt as to its meaning or by failing to have it set aside or amended if they thought it was defective. Once the injunction was entered the defendants were bound to obey it. Where, as here, the issuing court has jurisdiction, the validity of the injunction is not an issue in a criminal contempt prosecution. *Walker v. City of Birmingham,* 388 U.S. 307, 315–20, 87 S.Ct. 1824, 1829–32, 18 L.Ed.2d 1210 (1967); *United States v. United Mine Workers,* 330 U.S. 258, 293–94, 67 S.Ct. 677, 695–96, 91 L.Ed. 884 (1947).

### B.

■■■ The defendants contend that the evidence of willful violation by CBS was insuf-

ficient to support the guilty verdict and that Ladowitz was not shown to have actual knowledge of the preliminary injunction. We find the evidence of involvement by CBS in activities prohibited by the injunction fully sufficient to support the verdict. As to Ladowitz, he was an officer, director and shareholder of Stock Buyers, a party to the consent injunction. Thus, by the terms of Rule 65(d), Fed.R.Civ.P., he was bound by the order whether or not he had actual notice. Further, in her opening statement at the contempt trial one of the attorneys for the defendants stated that "these gentlemen," referring to Sergio and Ladowitz, went to their attorney and asked that he explain to them how to comply with the injunction. Therefore, the evidence of Ladowitz's knowledge of the injunction provisions was sufficient.

## III.

The determinative factor relates to the appointment of opposing counsel in the civil case as sole prosecutors of the criminal contempt action. The defendants maintain that in the absence of any supervision or control by the United States Attorney's office, the prosecution of a criminal contempt action by counsel for a party in the underlying civil litigation constitutes a denial of due process. Polo responds that the practice has been approved repeatedly and that it promotes efficiency by placing the prosecution of a case in the hands of persons most familiar with the facts.

### A.

The strongest support for Polo's position lies in dictum of Judge Learned Hand in *McCann v. New York Stock Exchange,* 80 F.2d 211 (2d Cir.1935), *cert. denied sub nom. McCann v. Leibell,* 299 U.S. 603, 57 S.Ct. 233, 81 L.Ed. 444 (1936). After discussing the confusion which often arose over whether contempt proceedings were civil or criminal, Judge Hand wrote:

> Surely it should be possible to find some simple and certain test by which the character of the prosecution can be determined. We think that it is. Criminal

prosecutions, that is, those which result in a punishment, vindictive as opposed to remedial, are prosecuted either by the United States or, by the court to assert its authority. The first are easily ascertainable; they will be openly prosecuted by the district attorney; it would not seem to be of consequence how they are entitled when that is true. In the second the court may proceed sua sponte without the assistance of any attorney, as in the case of disorder in the courtroom; there can be little doubt about the kind of proceeding when that is done. But the judge may prefer to use the attorney of a party, who will indeed ordinarily be his only means of information when the contempt is not in his presence. There is no reason why he should not do so, and every reason why he should; but obviously the situation may in that event be equivocal, for the respondent will often find it hard to tell whether the prosecution is not a remedial move in the suit, undertaken on behalf of the client. This can be made plain if the judge enters an order in limine, directing the attorney to prosecute the respondent criminally on behalf of the court, and if the papers supporting the process contain a copy of this order or allege its contents correctly. *Id.* at 214–15. It is generally agreed that Rule 42(b), Fed.R.Crim.P., was adopted in response to the problem identified in *McCann*. See *Musidor v. Great American Screen*, 658 F.2d 60, 64 (2d Cir.1981), *cert. denied*, 455 U.S. 944, 102 S.Ct. 1440, 71 L.Ed.2d 656 (1982) ("the Advisory Committee on Rules relied upon the *McCann* case in establishing Federal Rule of Criminal Procedure 42."). Rule 42(b) provides:

**Rule 42. Criminal Contempt**

**(b) Disposition Upon Notice and Hearing.** A criminal contempt except as provided in subdivision (a) of this rule shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. The notice shall be given orally by the judge in open court in the presence of the defendant or, on application of the United States attorney or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest. The defendant is entitled to a trial by jury in any case in which an act of Congress so provides. He is entitled to admission to bail as provided in these rules. If the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial or hearing except with the defendant's consent. Upon a verdict or finding of guilt the court shall enter an order fixing the punishment.

Relying upon *McCann*, the Second Circuit has consistently approved the appointment of opposing counsel to prosecute criminal contempt actions. In *Musidor* the court held that the due process clause does not require the selection of someone from the office of the United States Attorney to prosecute criminal contempt actions, and "[t]he practicalities of the situation—when the criminal contempt occurs outside the presence of the court—require that the court be permitted to appoint counsel for the opposing party to prosecute the contempt." 658 F.2d at 65. The "practicalities" referred to are the fact that these are not the kinds of cases which legal aid societies and public defenders take on and there are no funds out of which to pay private counsel, "nor would it be proper that he be paid by the opposing party." *Id.* Ironically, this is exactly what happens when counsel already employed by an interested party is appointed—the prosecutor is paid by the opposing party.

It is clear that Rule 42(b) does not explicitly permit prosecution of a criminal contempt by the attorney for a party in the underlying proceedings. By its terms the Rule merely permits the court to give notice to a defendant by an order to show cause or an order of arrest "on application ... of an attorney appointed by the court for that purpose...." The Second Circuit acknowledged this literal limitation of Rule 42(b) in *Universal City Studios, Inc. v.*

*N.Y. Broadway International Corp.*, 705 F.2d 94, 97 (2d Cir.1983), but found a broader purpose by implication:

> Though Rule 42(b) in terms refers to the United States Attorney or an attorney appointed by the court solely for purposes of giving notice to the accused contemnor, the plain implication of the Rule is that the proceedings are to be prosecuted either by the federal prosecutor or a private attorney specially designated to do so.

Assuming this reading of Rule 42(b) is correct, it does not answer the question in our case. The fact that the Rule may be read to authorize the appointment of a private attorney to prosecute a criminal contempt action does not mean that counsel for the opposing party in underlying litigation may be appointed or, if appointed, may prosecute the action without any supervision by the office of the United States Attorney.

### B.

No court of appeals, other than the Second Circuit, has held unequivocally that counsel for the opposing party may be appointed to prosecute a criminal contempt action. Cases from other circuits cited by Polo are distinguishable.

In *United States v. Lederer*, 140 F.2d 136, 138 (7th Cir.), *cert. denied*, 322 U.S. 734, 64 S.Ct. 1047, 88 L.Ed. 1568 (1944), the court stated:

> Appellant specifically objects to the court's appointing counsel, and insists that in a criminal contempt proceeding, the case against him should be in charge of the Attorney General or some assistant, or the United States District Attorney. In the absence of any specific statute, we think it was not only permissible but entirely appropriate that the court appoint counsel to take charge of proceedings instituted to enforce its order, and the attorneys thus appointed would be authorized to begin and carry through the contempt proceedings. The court is not required to select counsel from the staff of the United States District Attorney. *McCann v. New York Stock Ex-*

*change*, 2 Cir., 80 F.2d 211; *Western Fruit Growers v. Gotfried*, 9 Cir., 136 F.2d 98.

Polo's reliance on *Lederer* is greatly weakened, however, by the fact that there is no indication that the two private attorneys appointed by the court were counsel for the party seeking an adjudication of contempt or had any previous connection with the case. All this case tells us is that prior to the adoption of Rule 42(b) a court could appoint private attorneys to prosecute a criminal contempt action.

Polo also cites *In re C.B.S., Inc.*, 570 F.Supp. 578 (E.D.La.1983), *appeal dismissed for lack of jurisdiction sub nom. United States v. McKenzie*, 735 F.2d 907 (5th Cir.1984). As authority for Polo's position in the present case this decision suffers from the same infirmity as *Lederer*. After C.B.S. violated a restraining order by televising a portion of a program the United States Attorney declined a request from all the judges of the Eastern District of Louisiana to prosecute the network for criminal contempt. A judge from outside the district was appointed to conduct the proceedings when all the judges of the Eastern District of Louisiana recused themselves after appointing two attorneys to prosecute C.B.S. for criminal contempt. There is no indication in the record that the attorneys who were appointed to prosecute the criminal contempt action were counsel for the parties who obtained the injunction. In fact, on appeal, the original plaintiffs were represented by their own counsel while the appeal was brought by the two appointed attorneys and the United States Attorney. *In re C.B.S., Inc.*, merely aligns the Fifth Circuit with the Second in holding that Rule 42(b) permits the appointment of private attorneys to conduct criminal contempt proceedings as well as for the purpose of giving notice. 570 F.Supp. at 580–81. It does not consider whether the private attorneys so appointed may be counsel for the opposing party.

### C.

Direct authority on the other side of the question is also scarce. In *Brotherhood of*

*Locomotive Firemen and Enginemen v. United States*, 411 F.2d 312 (5th Cir.1969), the court found many due process deficiencies in proceedings where a union was found guilty of criminal contempt. Among the errors identified by the court of appeals was the appointment of counsel for the railroads which sought the contempt adjudications as attorneys to conduct those proceedings. The court stated:

As we look objectively at this record there is no doubt concerning the genesis of this due process deficiency. It flows directly from the fact that the governance of the whole criminal contempt proceeding was delivered into the hands of counsel for private parties, not the National Sovereign. This transcends the matter of competence, character and professional trustworthiness. Indeed, it is the highest claim on the most noble advocate which causes the problem—fidelity, unquestioned, continuing fidelity to the client. For while we would readily agree on this record that none of these distinguished counselors would have perverted a demand of the law in the prosecution of these respondents simply because it was detrimental to the interest of their railroad clients, the fact is that, continuing as they are in the related *merits*, case (note 4 *supra* ) to the vigorous support of the Carriers' positions, they have a duty faithfully to assert every—the word is every—contention, refute every—the word, is every—counter contention which they may legitimately and honorably do, which is disadvantageous to their carrier clients in this controversy. One such objective is to marshal and generate— through court orders if obtainable—pressures which will, or may, bring the Brotherhood earlier to book. To move fast, to get punitive orders which might put the Brotherhood in an awkward or disadvantageous position was therefore a desired goal on April 4. On the other-hand, as prosecutors for the court,—*i.e.* the National Sovereign—there was an obligation to make sure that the respondents' rights were scrupulously preserved. No one would suggest now that

in any way these fine lawyers submerged one interest over the other. But that is not the point. The point is that those conflicting claims of undivided fidelity present subtle influences on the strongest and most noble of men. The system we prize cannot tolerate the unidentifiable influence of such appeals.

411 F.2d at 319 (footnote omitted).

The defendants have cited several cases which hold that a party in the underlying civil case has no authority to participate in criminal contempt proceedings absent an appointment by the court. *E.g., In re Lahm Industries, Inc.*, 609 F.2d 567 (1st Cir.1979); *Ramos Colon v. United States Attorney*, 576 F.2d 1 (1st Cir.1978); *Kienle v. Jewel Tea Co.*, 222 F.2d 98 (7th Cir.1955). However, like some of the cases cited by Polo, these decisions do not address the question in the present case. They merely confirm the fact that an appointment by the court is required for a private attorney to prosecute criminal contempt proceedings.

## IV.

### A.

This court appears never to have determined the propriety of appointing counsel for a party in the underlying case as sole, unsupervised prosecutor of a criminal contempt action. The contempt conviction in *TWM Manufacturing Co., Inc. v. Dura Corp.*, 722 F.2d 1261 (6th Cir.1983), was reversed upon a determination that the evidence did not support a finding of criminal contempt. There was no "testimonial hearing" on the contempt charges in *TWM Manufacturing*. The contempt proceedings were commenced by TWM filing a motion and brief with a notice for a hearing. On the hearing date, without objection, the district court proceeded to decide the contempt issue on the basis of affidavits and arguments. On appeal, Dura argued for reversal on the ground that the requirements of Rule 42(b) were not satisfied. The United States Attorney did not serve notice and the private attorney who served

the notice had not been appointed by the court. This court did not reach the Rule 42(b) issue in light of its conclusion that the evidence was insufficient to support the conviction.

On at least two occasions this court has approved the practice of permitting private attorneys to assist public prosecutors in other types of criminal cases. In *Stumbo v. Seabold,* 704 F.2d 910 (6th Cir.1983), a habeas corpus action, we found that a Kentucky law which permits a privately retained prosecutor to assist the public prosecutor in a criminal case does not constitute a per se violation of due process. In reaching this conclusion we noted that the Kentucky law "requires the public prosecutor to retain control over the conduct of the trial to ensure that the state's interests are protected." *Id.* at 911. *United States v. Denton,* 307 F.2d 336 (6th Cir.), *cert. denied,* 371 U.S. 923, 83 S.Ct. 292, 9 L.Ed.2d 232 (1962), was a boot-legging case in which an assistant regional counsel for the Internal Revenue Service made the opening statement for the government and questioned several witnesses. On appeal the defendant relied on the fact that the IRS attorney had not been specially appointed by the Attorney General to prosecute the action. In affirming the conviction, this court found that the trial was conducted by the United States Attorney and that the other lawyer only assisted.

## B.

■ We conclude that it was an abuse of discretion for the district court to appoint attorneys for Polo to conduct the criminal contempt proceedings. These attorneys could assist the United States Attorney or an assistant, but could not proceed alone. We make this determination under our supervisory authority [1] and do not decide that such a proceeding constitutes a per se due process violation. At one time criminal contempt was treated as a sui generis action, not requiring all the safeguards of

traditional criminal proceedings. The development of safeguards for defendants in criminal contempt proceedings, particularly with respect to the right to trial by jury, was reviewed in *Bloom v. Illinois,* 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968). In *Bloom* the Court held that the Constitution guarantees the right to a jury trial in criminal contempt proceedings resulting in a sentence of imprisonment for two years. Writing for the Court, Justice White concluded that a defendant in a criminal contempt action has the right "not to be subjected to serious criminal punishment without the benefit of *all* the procedural protections worked out carefully over the years and deemed fundamental to our system of justice." *Id.* at 208, 88 S.Ct. at 1486 (emphasis added).

One of these procedural protections is the requirement that criminal actions be prosecuted by disinterested, publicly employed attorneys. A private attorney employed to represent a client does not operate under the same restraints as a public prosecutor. Aside from his ethical obligations a privately employed attorney has the single permissible objective of forwarding his client's interests. A public prosecutor, on the other hand, must consider the public interest which lies as much in seeing justice done in every case as in the successful prosecution of any particular case. The role of federal prosecutor was eloquently described by the Supreme Court in *Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935):

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the

1. See *Bartone v. United States,* 375 U.S. 52, 54, 84 S.Ct. 21, 11 L.Ed.2d 11 (1963) (per curiam) (Both the Supreme Court and the courts of appeals have broad powers of supervision over federal proceedings.).

twofold aim of which is that guilt shall not escape or innocence suffer.

These principles have been codified in the ABA Model Code of Professional Responsibility. Canon 7 of the Model Code provides, at EC7–13:

EC 7–13 The responsibility of a public prosecutor differs from that of the usual advocate; his duty is to seek justice, not merely to convict. This special duty exists because: (1) the prosecutor represents the sovereign and therefore should use restraint in the discretionary exercise of governmental powers, such as in the selection of cases to prosecute; (2) during trial the prosecutor is not only an advocate but he also may make decisions normally made by an individual client, and those affecting the public interest should be fair to all; and (3) in our system of criminal justice the accused is to be given the benefit of all reasonable doubts. With respect to evidence and witnesses, the prosecutor has responsibilities different from those of a lawyer in private practice: the prosecutor should make timely disclosure to the defense of available evidence, known to him, that tends to negate the guilt of the accused, mitigate the degree of the offense, or reduce the punishment. Further, a prosecutor should not intentionally avoid pursuit of evidence merely because he believes it will damage the prosecutor's case or aid the accused.

See also, *Professional Responsibility: Report of the Joint Conference*, 44 A.B.A.J. 1159, 1218 (1958):

The public prosecutor cannot take as a guide for the conduct of his office the standards of an attorney appearing on behalf of an individual client. The freedom elsewhere wisely granted to a partisan advocate must be severely curtailed if the prosecutor's duties are to be properly discharged. The public prosecutor must recall that he occupies a dual role, being obligated, on the one hand, to furnish that adversary element essential to the informed decision of any controversy, but being possessed, on the other, of important governmental powers that are pledged to the accomplishment of one objective only, that of impartial justice. Where the prosecutor is recreant to the trust implicit in his office, he undermines confidence, not only in his profession, but in government and the very ideal of justice itself.

It is too much to expect an attorney committed to his client and the client's cause to recognize the "twofold aim" referred to in *Berger* when acting as prosecutor in proceedings which, if successful, can benefit immeasurably that client and his cause. We recognize that federal prosecutors occasionally overlook their twofold obligation and become too concerned with obtaining convictions. However, this overzealousness does not have its roots in a conflict of interest. When it manifests itself the courts deal with it on a case-by-case basis as an aberration. This is quite different from approving a practice which would permit the appointment of prosecutors whose undivided loyalty is pledged to a party interested only in a conviction.

The practicality of having an attorney who is familiar with the facts of the underlying litigation involved in a criminal contempt prosecution is obvious. However, our system of justice recognizes "higher values than speed and efficiency." *Stanley v. Illinois*, 405 U.S. 645, 656, 92 S.Ct. 1208, 1215, 31 L.Ed.2d 551 (1972). Where counsel for an interested party is appointed pursuant to Rule 42(b) he or she cannot conduct the criminal contempt proceedings, but may assist the United States Attorney or the assistant United States Attorney assigned to the prosecution. If the United States Attorney should decline to prosecute upon request, then the district court may appoint one or more disinterested attorneys to do so. In that event, again, counsel for an interested party may be appointed to assist. However, in this circuit an attorney for a party in underlying litigation may not conduct criminal contempt proceedings as sole or primary counsel.

706

The judgment of the district court is reversed, and the case is remanded for the retrial mentioned on page 700.