STATE OF NEW JERSEY

v.

Michael IMPERIALE.

Cr. No. 89–134 (HLS).

United States District Court,
D. New Jersey.

Sept. 27, 1991.

On Motion for Reconsideration
Nov. 1, 1991.

John Kennedy, Deputy Atty. Gen., Div. of Criminal Justice, Appellate Section, Trenton, N.J., for State of N.J.

Gregg Foti, Lakewood, N.J., for Michael Imperiale.

## OPINION

SAROKIN, District Judge.

*Introduction*

In this matter, the federal government challenges the New Jersey Rule and practice which permits private citizens to prosecute minor crimes where the local prosecutor has failed or refused to do so.

The practical reasons for the rule are obvious. There are many instances in which the prosecutor, because of the nature of the complaint combined with limited resources, chooses not to prosecute a particular complaint or category of complaints. Many personal disputes are and can be decided or resolved at the municipal court level without the time and expense of a local prosecutor.

The risk of abuses from such practice is equally obvious. Individuals can and do utilize such criminal proceedings to bolster a related civil proceeding or merely for vindictive or harassing purposes. In addition to possible improper initiation, the conduct of such proceedings risks a violation of due process. The strictures which guide and limit a prosecutor are unknown to the private citizen and are difficult to enforce. Plea bargains which are otherwise available would not be. Duties of disclosure and other constitutional safeguards likewise would be unknown and unenforced. Thus, in the initiation and the conduct of such private prosecutions, the self-interest of the complainant-prosecutor, absent the safeguards imposed upon a neutral prosecutor, place the constitutional rights of the named defendant in jeopardy.

In certain cases, the conflict of interest of a self-interested complainant acting in the role of prosecutor may be of such a magnitude that the court should prohibit a complainant or her agent from acting as prosecutor. This is such a case.

*Background*

Before the court is defendant's motion to dismiss the criminal case against him based on the allegedly unconstitutional application of New Jersey Local Court Rule 7:4–4(b), which allows private individuals to prosecute certain criminal complaints.[1] The motion is opposed by the State, as represented by Mr. Gregg Foti, whose opposition is supported by the New Jersey Attorney General, an intervenor in the case for purposes of this motion.

Defendant Michael Imperiale is a Supervisor of Mails at the Monmouth General Mail Facility, Eatontown, New Jersey. Mr. Gregg Foti, the complainant and prosecutor in this case, is a maintenance control clerk at the same postal facility, as well as an officer of the union.

---

1. Defendant's Memorandum in Support of his Motion to Dismiss also contends that because the alleged assault was committed by a federal officer in the course and scope of his employment, and because the conduct that he took was reasonably necessary and appropriate for his official duties, defendant is immune from state criminal prosecution under *Cunningham v. Nea-* *gle,* 135 U.S. 1, 10 S.Ct. 658, 34 L.Ed. 55 (1890), and its progeny. However, as defendant concedes, defendant's immunity is not at issue in this motion because such a conclusion requires factual determinations which the court can only resolve after a factual hearing or at trial. Def. Reply Brief at 1 n. 1.

Foti and Imperiale present different versions of the March 22, 1989 events which give rise to the criminal complaint. Briefly, Imperiale claims that he saw a misplaced mail hamper creating a safety hazard on the work floor; when he pushed it out of the way, Foti made a commotion, shouting that Imperiale was doing unit bargaining work. Imperiale claims that *Foti* then pushed the hamper towards Imperiale. Imperiale Declaration, ¶ 4. Imperiale then issued Foti a letter of suspension for insubordination, at which time Foti allegedly vowed revenge on Imperiale. *Id.* Foti and the union subsequently filed two grievances against Imperiale for creating a safety hazard and for issuing the suspension, both of which were denied at stage two of the grievance procedure.

The next day, on March 23, 1989, Foti filed a criminal complaint stating that Imperiale "did commit simple assault upon complainant by pushing a rolling mail hamper into the victim three times, causing injury." Thus, in contrast to Imperiale's story, Foti complains that it was *Imperiale* who pushed the mail cart at Foti and that Foti suffered injury as a result. Cplt., Notice of Removal, Exh. 1. Mr. Foti missed two days of work following the incident. Imperiale Dec., ¶ 8. Pursuant to this complaint, the New Jersey Municipal Court of Eatontown issued summons No. C–266–89 against Imperiale, charging simple assault in violation of N.J.S. 2C:12–1(a).[2] On April 11, 1989, defendant removed the case to federal court pursuant to 28 U.S.C. § 1442(a)(1).

On May 30, 1989, the Municipal Prosecutor of the Borough of Eatontown informed the court that he would not prosecute the matter. Pursuant to N.J. Ct.R. 7:4–4(b), Foti seeks to privately prosecute this criminal case of simple assault.[3] 7:4–4(b) provides:

> Whenever in his [sic] judgment the interests of justice so require, or upon the request of the court, the Attorney General, county prosecutor, municipal court prosecutor, or municipal attorney, as the case may be, may appear in any court on behalf of the State, or of the municipality, and conduct the prosecution of any action, but if the Attorney General, county or municipal court prosecutor or municipal attorney does not appear, any attorney may appear on behalf of any complaining witness and prosecute the action for and on behalf of the State or municipality.

Foti intends to prosecute this action himself, without hiring counsel.[4] Defendant is represented by the United States Attorney for New Jersey, as the incident occurred in the course of defendant's duties as a federal officer. By order dated September 12, 1990, this court granted the New Jersey Attorney General's Office leave to intervene pursuant to 28 U.S.C. § 2403(b) in order to defend the constitutionality of the state court rule.

### Discussion

Defendant argues that N.J. Ct.R. 7:4–4(b) is unconstitutional as applied in this case because the private prosecutor rule deprives this criminal defendant of his constitutional right to a "fundamentally fair trial" under the due process clause of the fifth and fourteenth amendments. Although defendant sometimes refers to his interest as a "fundamental right" to an impartial and disinterested prosecutor, *see* Def. Reply Brief at 4, this terminology does not accurately reflect the constitutional interest at stake. Both defendant and

---

**2.** N.J.S. 2C:12–1(a)(1) provides, in pertinent part:

> A person is guilty of simple assault if he:
> (1) Attempts to cause or purposely, knowingly or recklessly causes bodily injury to another; ....
> Simple assault is a disorderly persons offense unless committed in a fight or skuffle [sic] entered into by mutual consent, in which case it is a petty disorderly persons offense.

A disorderly persons offense exposes a defendant to penalties not exceeding six months imprisonment and a $1000 fine. N.J.S.A. 2C: 43–3, 43–8.

**3.** Rule 7:4–4(b) only applies in municipal courts, *see* N.J. Ct. R. 7:1, which have jurisdiction over a limited number of minor offenses, i.e., those offenses which carry a maximum penalty of six months imprisonment and a $1000 fine. N.J.S.A. 2A:8–21. However, the Local Rule also applies when a federal defendant removes the initial municipal court action to federal court. *New Jersey v. Kinder,* 701 F.Supp. 486, 488–89 (D.N.J.1988). *See also Arizona v. Manypenny,* 451 U.S. 232, 101 S.Ct. 1657, 68 L.Ed.2d 58 (1981) (federal court removal cannot enlarge or constrict parties' rights under state law).

**4.** Although Rule 7:4–4(b) only authorizes "any attorney" to prosecute an action, the longstanding practice in New Jersey has been to allow complainants themselves (who are not attorneys) to prosecute under Rule 7:4–4(b). Brief of Attorney General ("AG Brief") at 5–6. Defendant does not seek dismissal of the Complaint based on this technicality.

the State[5] agree that the private prosecutor provision implicates defendant's due process right to a "fundamentally fair trial." Def. Brief at 18; AG Brief at 6–7. The absence of an impartial and disinterested prosecutor has been held to violate a criminal defendant's due process right to a fundamentally fair trial. *Ganger v. Peyton,* 379 F.2d 709, 714 (4th Cir.1967) (conviction violated fundamental fairness assured by due process clause when part-time Commonwealth Attorney suffered impermissible conflict of interest by prosecuting defendant for criminal assault while simultaneously representing defendant's wife in divorce action).

■ The question of what constitutes an "impartial" prosecutor demands clarification. A prosecutor is not "partial" simply because she zealously seeks conviction. Rather, "partiality" in this context is similar to a conflict of interest in the sense that the prosecutor has a personal interest or stake in the outcome of the criminal prosecution. Thus, "partiality" refers not to "personal" zeal but to "structural" problems where personal interests (including non-pecuniary interests) generate a structural conflict of interest. *See Young v. U.S. ex rel. Vuitton et Fils S.A.,* 481 U.S. 787, 807–08 and n. 18, 107 S.Ct. 2124, 2137–38 and n. 18, 95 L.Ed.2d 740 (1987); *Polo Fashions v. Stock Buyers Intern.,* 760 F.2d 698, 705 (6th Cir.1985).

According to defendant, Mr. Foti's interest in prosecuting this case is revenge, not necessarily pecuniary gain. Def. Reply Brief at 6. Therefore, the State suggests that the instant prosecution is not "tainted" because a private prosecutor only suffers from a "structural" conflict of interest if the prosecutor/complainant is involved in a relevant, simultaneous civil proceeding. AG Brief at 7–9.

However, as discussed *infra,* the concerns of the *Vuitton* court and other courts which have addressed similar situations are not that narrow. The *Vuitton* court was especially concerned not only with the conflicting roles of prosecutor and private counsel, but also with the fact that any potential interests of or relationships between the prosecutor and a criminal defendant might compromise the fundamental integrity of the prosecutorial function. 481 U.S. at 803–08. *See also, State v. Ross,* 189 N.J.Super. 67, 74, 458 A.2d 1299 (App.Div.1983) ("For the determination [of probable cause] to be made by the complaining witness and for the summons to be issued over his signature is fundamentally offensive to the most elementary notions of due process....").

Nevertheless, even accepting the State's narrow interpretation of partiality and interest, the fact that Mr. Foti could or might file a future civil suit against Mr. Imperiale, even though one is not pending, could constitute a "structural" conflict of interest. *See State of N.J. v. Kinder,* 701 F.Supp. 486, 491 (D.N.J.1988); *Hughes v. Bowers,* 711 F.Supp. 1574, 1583–84 (N.D.Ga.1989). Thus, there is no question that private prosecutors such as Mr. Foti may be challenged as "partial" and "interested."

Although both defendant and the State agree that the defendant's due process rights may be implicated at some point in this "private" prosecution, the parties dispute when and how those rights may become implicated. Defendant suggests that when the private prosecutor is either an attorney retained by the complainant or is the complainant herself, the private prosecutor suffers from a *per se* conflict of interest. Def. Brief at 9.[6] Defendant stresses that this is not a challenge to Rule 7:4–4(b) *per se,* Def. Brief at 19, but rather, that in those situations in which the private prosecutor is so associated with the complainant, the prosecutor cannot be impartial or disinterested. Therefore, like the case of *Young v. U.S. ex rel. Vuitton et Fils S.A.,* 481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987) (discussed *infra*), "[g]iven this inherent conflict in roles," the "arrangement represents an actual conflict of interest if its potential for misconduct is intolerable." *Id.* at 807, n. 18, 107 S.Ct. at 2138, n. 18. Although defendant emphasizes that his challenge to Rule 7:4–4(b) is only as applied here, defendant seems to suggest that any private prosecutor so as-

---

5. Throughout this discussion, the "State" refers to the New Jersey Attorney General, who is defending the constitutionality of the Local Rule, as opposed to the private prosecutor in this case.

6. In this sense, defendant apparently seeks to establish a "bright line" rule such as the *Vuitton* court established. *See infra* and 481 U.S. at 809, 107 S.Ct. at 2138.

sociated with a complainant has a *per se* conflict of interest. Def. Brief at 9.

The State rejects defendant's proposed holding and argues that defendant presents, in effect, a *per se* challenge to Rule 7:4–4(b). AG Brief at 10. According to the State, a court cannot assess any violation of a defendant's due process rights prior to trial. Rather, a defendant's constitutional right to a fundamentally fair trial only becomes implicated if the defendant was *actually* deprived of a fair trial, as reflected by an *ex post* examination of concrete incidents at trial which ultimately prejudiced the defendant. AG Brief at 7–10.

For the reasons explained below, the court rejects defendant's apparent suggestion that *any* private prosecutor either hired by a complainant or, as in this case, the complainant himself, necessarily suffers from such a conflict of interest so as to render such a private prosecution unconstitutional. However, the court agrees with the defendant's more modest proposal; that is, that a court can assess the particular conflicts of interest and attendant due process implications raised by specific private prosecutions on a case-by-case basis prior to trial.

Based on a number of factors and considerations described below, the court concludes that the specific facts, circumstances, and "inherent conflict of roles" underlying this particular private prosecution generate a potential for misconduct which this court finds intolerable. Neither the State nor the private prosecutor himself, Mr. Foti, have presented any evidence or made any representations to dispel the court's concerns in this regard. As explained below, the court concludes that disqualification of Mr. Foti and his agents rather than dismissal is the more appropriate remedy at this juncture. Accordingly, the court will disqualify Mr. Foti and his agents from prosecuting this case and issue an order to show cause why this case should not be dismissed for failure to prosecute.

The issues raised in this constitutional challenge to New Jersey Court Rule 7:4–4(b) resonate with the concerns arising from the use of private prosecutors in criminal contempt cases, which concerns culminated in the strong language and reasoning of the Supreme Court's decision in *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987). In that trademark infringement case, the district court followed the frequent practice of appointing plaintiff's lawyer as a private prosecutor to bring criminal contempt charges against the defendants for failure to comply with the court's injunction. The Supreme Court reversed the contempt convictions based on its supervisory authority in contempt proceedings. 481 U.S. at 790, 107 S.Ct. at 2128.

■ Placing great emphasis on the ethical rules governing attorneys and prosecutors and the duties owed to clients and the public, respectively,[7] the Court found, "as will generally be the case, [that] the appointment of counsel for an interested party to bring the contempt prosecution in this case at a minimum created *opportunities*

---

7. Neither defendant nor the State has raised the issue that the ethical tensions inherent when the private prosecutor is an attorney retained by a client may not be present in this case because the private prosecutor is not hired counsel but complainant himself. Thus, Mr. Foti is not torn by the competing ethical duties of a prosecutor and private counsel's ethical obligations to her client, such as confidentiality, loyalty, etc.

This is not to say that the ethical duties of a prosecutor do not apply to Foti, nor that those duties are not compromised by Foti's personal interest in the matter. *See* AG Brief at 13 ("the private prosecutor would be obligated to conform to the ethical duties of a public prosecutor"), citing *State v. Worley*, 369 S.E.2d 706 (W.Va.1988), *cert. denied*, 488 U.S. 895, 109 S.Ct. 236, 102 L.Ed.2d 226 (1988). To the contrary, as the prosecutor, Foti is obliged to follow the applicable ethical, procedural, and constitutional rules, such as the duty to disclose exculpatory evidence and not to pursue prosecutions lacking probable cause. *Kinder*, 701 F.Supp. at 490 (private prosecutor must comply with prosecutor's obligations and New Jersey's Rule of Professional Conduct for prosecutors); *Polo Fashions*, 760 F.2d at 705 (same).

The obvious concern when a complainant prosecutes a criminal charge is that if the complainant is lying, i.e., Foti is in fact the one who pushed the mail cart, Foti is aware of other witnesses to the incident, etc., it is unlikely that Foti as the complainant will turn over this information to the defendant, let alone dismiss the charges for lack of probable cause. The few private prosecutor cases which have been appealed and reported demonstrate that such concerns are real. *See e.g. State v. Cantor*, 221 N.J.Super. 219, 225–26, 534 A.2d 83 (App.Div. 1987) (where private prosecutor improperly withheld exculpatory evidence, constitutional deficiency cured at re-trial); *State v. Ross*, 189 N.J.Super. at 74, 458 A.2d 1299 (probable cause determination by complaining witness offensive to elementary notions of due process).

for conflicts to arise, and created at least the *appearance* of impropriety." *Id.* at 806, 107 S.Ct. at 2137 (emphasis in original). But even more than the appearance of impropriety, the Court was concerned with the *actual* and inherent conflict of interest which *necessarily* tainted the criminal prosecution. Justice Brennan, writing for the Court, stated:

> Given this inherent conflict in roles, there is no need to speculate whether the prosecutor will be subject to extraneous influence.... An arrangement represents an actual conflict of interest if its potential for misconduct is intolerable. The determination whether there is an actual conflict of interest is therefore distinct from the determination whether that conflict resulted in any actual misconduct.

*Id.* at 807, 807 n. 18, 107 S.Ct. at 2138, 2138 n. 18. The Court illustrated the urgency of this conflict with instructive examples of how an interested prosecutor could compromise the integrity of many prosecutorial functions prior to trial and beyond court supervision, (e.g., who is charged, which witnesses are utilized, plea negotiations, investigations, etc.). *Id.* at 807, 107 S.Ct. at 2137. In *Vuitton*, this defect in the prosecution, i.e., the inherent conflict of roles, could not be cured, even in a contempt case where the court itself initiates the prosecution. Thus, the Court instituted a "bright line" rule that henceforth, federal courts may not appoint interested counsel to prosecute criminal contempt proceedings. *Id.* at 809, 107 S.Ct. at 2138.

However, the Court specifically based the entire opinion on its supervisory power in contempt proceedings. *Id.* at 809 n. 21, 107 S.Ct. at 2139 n. 21. Only Justice Blackmun, in his concurrence, argued that the appointment of interested counsel to prosecute criminal contempt in state or federal courts was a *per se* violation of due process. *Id.* at 814–15, 107 S.Ct. at 2141 (Blackmun, J., concurring).

Consistent with the reasoning in *Vuitton*, other courts have not hesitated to reverse criminal contempt convictions prosecuted by interested counsel pursuant to their supervisory authority, *see Polo Fashions v. Stock Buyers Intern.*, 760 F.2d 698, 705 (6th Cir.1985) (establishing rule in circuit against appointment of interested attorney in underlying proceeding to prosecute contempt proceeding), and some courts have recognized the problem as a due process violation. *See Brotherhood of Locomotive Firemen & Enginemen v. U.S.*, 411 F.2d 312, 319 (5th Cir.1969).

In the case at hand, the State easily and appropriately distinguishes *Vuitton* and the criminal contempt cases on the grounds that the courts disallowed the interested private prosecutors pursuant to their supervisory power to enforce judicial authority via criminal contempt prosecutions initiated by the courts themselves. Indeed, the *Vuitton* court specifically declined to decide the constitutional question. 481 U.S. at 809 n. 21, 107 S.Ct. at 2139 n. 21. However, the strong language and reasoning of *Vuitton* and the criminal contempt cases focus on the prosecutorial function and potential conflict of interests, concerns which are equally at issue in due process challenges to the fundamental fairness of a trial. Thus, *Vuitton* is not only analogous but virtually on point in any criminal case where the private prosecutor has a personal stake or a conflict of interest. 481 U.S. at 808, 107 S.Ct. at 2138 (" 'In modern times, procedures in criminal contempt cases have come to mirror those used in ordinary cases[;].... The requirement of a disinterested prosecutor is consistent with that trend....") (*quoting Bloom v. Illinois*, 391 U.S. 194, 207, 88 S.Ct. 1477, 1485, 20 L.Ed.2d 522 (1968)); *see also* 481 U.S. at 810–14, 107 S.Ct. at 2139–41 (citing cases of conflict of interest outside of criminal contempt context as evidence of damage to public confidence in judicial system).[8]

---

**8.** Moreover, the court notes that the language, holding, and reasoning of *Vuitton* have been applied to other contexts where questions have been raised concerning a prosecutor's personal interests or conflict of interests. *See United States v. Eisenberg*, 773 F.Supp. 662, 703–06 (D.N.J.1991) (making fact specific inquiry as to prosecutor's conflict of interest arising from involvement in related S.E.C. civil investigation, and focusing inquiry on: 1) level of control of prosecution by Office of the United States Attorney, and 2) level of prosecutor's involvement in underlying civil action); *U.S. ex rel. S.E.C. v.*

*Carter*, 907 F.2d 484, 486 (5th Cir.1990) (same; using *Vuitton* as basis for holding); *Dick v. Scroggy*, 882 F.2d 192, 198–99 (6th Cir.1989) (Celebrezze, S.J., concurring in the judgment) (applying *Vuitton* as basis for conflict of interest analysis in case where prosecutor simultaneously represented victim in civil action against defendant, and suggesting that prosecutor's pecuniary interest in a case may constitute a constitutional violation). Indeed, *Vuitton* has become the leading case on general matters of a prosecutor's conflict of interest or personal interest.

Moreover, beyond the criminal contempt context, courts have applied the concerns and reasoning of *Vuitton* to decisions to disqualify private prosecutors based on the court's "inherent authority over who may appear and prosecute cases." *See State of New Jersey v. Kean,* Crim. No. 87–439 (D.N.J. Jan. 28, 1988), Trans. at 17, Def. Brief. App. 1.[9] The State does not dispute the court's authority to disqualify the private prosecutor, nor does the State address the fact that courts which have exercised such authority analyzed that decision in terms of the same constitutional, due process concerns lurking in the contempt cases. Although this court recognizes that few courts have elected to base such pre-trial disqualifications on constitutional grounds, the courts' concerns have consistently been phrased in due process terms.

However, the State challenges the relevancy of any "constitutional," due process-based concerns at this juncture in the case. Rather, the State argues that criminal defendants in private prosecutor cases only suffer due process violations if their actual trial was fundamentally unfair, even if the private prosecutor has an inherent conflict of interest or personal interest in the criminal case. AG Brief at 7–10, 12–13. This is the "harmless error" approach, which stands bruised but intact given that Part III B of the *Vuitton* opinion only carried four votes.[10] *But see Ganger,* 379 F.2d at 714 (where constitutional deficiency of conviction arises from conflicting roles of private attorney and prosecutor, harmless error analysis inappropriate). However, the cases upon which the State relies are not analogous to and do not reflect the due process concerns raised by defendant, since in those cases, the private prosecutor merely *assisted* the public prosecutor, who supervised and retained ultimate control over the prosecution. *See Polo Fashions,* 760 F.2d at 704 (distinguishing criminal contempt case from *Stumbo v. Seabold,* 704 F.2d 910 (6th Cir.1983) where private prosecutor in *Stumbo* supervised and controlled by public prosecutor); *Hughes v. Bowers,* 711 F.Supp. at 1582 (private prosecutor not unconstitutional *per se* where District Attorney controls prosecution). Thus, the fundamental fairness was properly assessed after trial, whereas here, a private prosecution without *any* supervision of the district attorney's office escalates the potential for unbridled and undetectable misconduct.

To preclude the court from making an independent, pre-trial assessment of a private prosecutor's conflict of interest turns a blind eye to the very real concern of harassment via frivolous criminal prosecutions, especially present in instances such as here, where the complainant allegedly swore "revenge" for defendant's discipline of Mr. Foti. Such concerns are heightened by the fact that a responsive suit for malicious prosecution may not serve as a credible corrective threat—a New Jersey federal district court has held that the standards for a malicious prosecution suit against a private prosecutor are just as high and as difficult to achieve as in a suit against a district attorney. *Voytko v. Ramada Inn of Atlantic City,* 445 F.Supp. 315, 326–29 (D.N.J.1978). In addition, as defendant points out in his Reply Brief, the New Jersey Law Division only has *de novo* review of the *record* in appeals from municipal court. Without a new trial in the Law Division conducted by a district attorney, the court cannot redress any improper pretrial manipulations by the private prosecutor *which have yet to be discovered* (such as the withholding of *Brady* material due to a ethical duty of confidentiality to a

---

**9.** *See also Vuitton,* 481 U.S. at 808 n. 18, 107 S.Ct. at 2138 n. 18 (court can always exercise its inherent supervisory power over proceedings and disqualify certain individuals from prosecuting certain cases based on the prosecutor's over-zealousness); *State v. Marshall,* 123 N.J. 1, 176, 586 A.2d 85 (1991) (court can disqualify prosecutor for "nefarious" interest such as personal interest or financial stake in outcome of criminal prosecution); *Chambers v. Nasco,* — U.S. ——, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991) (courts have inherent authority "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases," including the authority to control who may appear before the court and to dismiss a suit *sua sponte* for failure to prosecute) (quoting *Link v.*

*Wabash R. Co.,* 370 U.S. 626, 630–31, 82 S.Ct. 1386, 1388–89, 8 L.Ed.2d 734 (1962)).

**10.** Only four justices joined Part III B of the opinion, which holds, *inter alia:*

[W]e establish a categorical rule against the appointment of an interested prosecutor, adherence to which requires no subtle calculations of judgment. Given the fundamental and pervasive effects of such an appointment, we therefore hold that harmless-error analysis is inappropriate in reviewing the appointment of an interested prosecutor in a case such as this.

481 U.S. at 814, 107 S.Ct. at 2141.

paying client who happens to be a witness/complainant, the denial of a plea, the conduct of the investigation, and the *Vuitton* Court's other concerns). *See* 481 U.S. at 813, 107 S.Ct. at 2141 ("to assess the impact of a conflict of interests on the attorney's options, tactics, and decisions in plea negotiations would be virtually impossible"). Hence, the possibility of appeal serves as an important but limited check on constitutionally deficient convictions by private prosecutions, as an appeals court cannot redress a private prosecutor's undisclosed, improper pre-trial manipulation of a case.

But beyond the practical difficulties of protecting a criminal defendant's rights after completion of a criminal trial, the State's position is not sufficiently sensitive to the due process concerns, the appropriate role of the prosecutor, and the importance of the appearance of justice. The "structural" conflict of interest described in *Vuitton* is no less present in common criminal cases, even though the court may rely on a different source of authority (i.e., the inherent authority to disqualify interested and overzealous prosecutors) in order to correct the inherent defects of the prosecution. Such concerns regarding due process and the role of the prosecutor are evident in cases such as *State v. Ross,* 189 N.J.Super. 67, 74, 458 A.2d 1299 (App.Div. 1983), where the court invalidated convictions arising from summons' issued by the complainant:

> For the determination to be made by the complaining witness and for the summons to be issued over his signature is fundamentally offensive to the most elementary notions of due process, violates the spirit if not the letter of the Fourth Amendment, and is a blatant and intolerable violation of our rules of practice. The criminal and quasi-criminal system is neither designed nor intended to provide a vehicle for the raising and settlement of purely private disputes. The process here, therefore, constituted a subversion of the basic distinction between criminal and civil justice.

*See also Vuitton,* 481 U.S. at 813, 107 S.Ct. at 2141 ("Public confidence in the disinterested conduct of that official [the prosecutor] is essential") (gaining four votes); *id.* at 811, 107 S.Ct. at 2139 ("appointment of an interested prosecutor creates an appearance of impropriety that diminishes faith in the fairness of the criminal justice system in general"); *Ganger,* 379 F.2d at 714 ("The prosecuting attorney is an officer of the court, holding a quasi judicial position[; her] primary responsibility is essentially judicial—the prosecution of the guilty and the protection of the innocent") (citations omitted).

Moreover, the State makes an alternative argument which implicitly concedes that due process concerns are implicated at the pre-trial stage. The State argues that the importance of the state interests served by the private prosecutor provision outweighs the potential abuses of the provision given the limited nature of the penalty (up to six months in prison). AG Brief at 10–12. As the State implicitly concedes by the proffer of a balancing argument, a defendant's due process rights and the interests of justice are implicated pre-trial in private prosecutions, regardless of the maximum penalty she faces. *See State v. Gonzalez,* 114 N.J. 592, 604, 556 A.2d 323 (1989) (where court held that criminal traffic violations do not require probable cause determination, court went on to recognize: "Without the risk of detention, a suspect's interests in liberty and freedom from unreasonable prosecution are still paramount, but the procedures required to protect those interests need not be as extreme or absolute, because the threat to those interests is not as great"); *Vuitton,* 481 U.S. at 814, 107 S.Ct. at 2141 (criminal defendants impacted by mere invocation of criminal process).

■ However, the court concludes that there is no need for the court to "balance" a defendant's liberty and the relevant state interests because the private prosecutor provision can be preserved within parameters which do not impinge on its general availability or applicability. Quite simply, upon motion by the defendant or *sua sponte,* the court can review the interests of the private prosecutor and disqualify that prosecutor due to her conflict of roles and interests pursuant to the court's inherent authority to disqualify overzealous and interested prosecutors. However, the court need not dismiss the action and thereby defeat the applicability of the private prosecutor provision, as another volunteer prosecutor can step forward. Even if the substitute prosecutor is prompted to assume the job due to the influence of the initial complainant, the distancing of the prosecutor from the facts of the case affords the defendant more protection from abuse—the substitute, "disinterested" prosecutor exposes herself to a possible malicious prosecution suit, without the ben-

efits which the complainant might seek to gain from the prosecution.

In adopting this approach, this court departs from the reasoning expressed in *State of New Jersey v. Kinder*, 701 F.Supp. 486 (D.N.J.1988), a simple assault case against a federal officer virtually identical to the one at hand.[11] In *Kinder*, Judge Debevoise acknowledged the defendant's concerns regarding an interested private prosecutor, but held that "any conflict of interest arising out of the situation presented here does not constitute a violation of due process under the circumstances of this case," primarily because "the full panoply of procedural protections is not required where lesser charges are involved and minimum punishment is authorized." *Id.* at 491 (citing *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968)). The *Kinder* prosecution, as here, was for a petty offense which carried a maximum penalty of six months in prison and a $1000 fine.[12]

■ As defendant suggests, Judge Debevoise did not fully address the private prosecutor's conflict of interest. Although defendant agrees that private prosecutors are not *per se* unconstitutional, it is the existence of the conflict or private interests which implicates defendant's due process rights, and thus, the analysis should turn on the nature and magnitude of the conflict, not the penalty. *See Vuitton*, 481 U.S. at 810, 107 S.Ct. at 2139; *Rodriguez v. Rosenblatt*, 58 N.J. 281, 294–95, 277 A.2d 216 (1971) (even where minimal nature of penalty does not mandate constitutional protection of right to counsel, sixth amendment concerns are still implicated and should inform court's exercise of discretionary power to appoint counsel).[13] Defendant is not asking this court to declare that any private prosecutor is *per se* uncon-

stitutional, but rather that in this case, the complainant's conflict of interests is of such a level that a defendant's due process rights are necessarily and intolerably threatened.

Apart from Judge Debevoise's "penalty" analysis, other courts which have considered (*post*-trial) how an interested private prosecutor affects the fairness of a trial have focused consistently on several factors: 1) the private prosecutor's actual conflict of interest, as evident from her ethical and professional obligations, her pecuniary interest in the outcome of the criminal case, etc.;[14] 2) the degree to which the district attorney exercised and ultimately retained control over the prosecution and the possibility of preserving the appropriate prosecutorial role and function given the victim's stake in the prosecution;[15] 3) the involvement of the trial court in the criminal trial and whether the district attorney specifically declined to prosecute the case;[16] and 4) involvement of the prosecutor in a pending civil case concerning the same facts as the criminal charge.[17] This list is by no means exhaustive, and certainly a private prosecutor's conflict of interest or personal interest can be demonstrated by a variety of factors. In addition, it may be appropriate to add to this list the *Vuitton* Court's special concern with the appearance of justice, although the actual holding in *Vuitton* concerned the intolerable potential for misconduct arising from a private prosecutor's necessary conflict of interest. 481 U.S. at 807, n. 18, 107 S.Ct. at 2138, n. 18.

Private prosecutors are not necessarily burdened by a conflict of interest. This is especially true in the commendable, ideal situations for which the Local Rule was intended, such as where concerned citizens

---

11. The only material difference between this case and *Kinder* is the fact that the private prosecutor in *Kinder* was an attorney hired by the complainant, whereas in this case, the complainant himself is acting as prosecutor.

12. It is interesting to note that one of the Appellants in *Vuitton* was sentenced to only six months imprisonment. 481 U.S. at 790 n. 1, 107 S.Ct. at 2128 n. 1.

13. *See also U.S. v. Eisenberg*, 773 F.Supp. 662 (D.N.J.) and *U.S. ex rel. S.E.C. v. Carter*, 907 F.2d 484 (5th Cir.1990) (assessing prosecutor's impermissible conflict of interest based on 1) degree of control of prosecution by U.S. Attorney's office, and 2) magnitude of prosecutor's involvement in underlying civil action).

14. *Vuitton*, 481 U.S. at 807–08, 814, 107 S.Ct. at 2137–38, 2141; *Kinder*, 701 F.Supp. at 491; *United States v. Heldt*, 668 F.2d 1238, 1275 (D.C.Cir. 1981); *Ganger*, 379 F.2d at 713; *Hughes*, 711 F.Supp. at 1582; *Brotherhood*, 411 F.2d at 319.

15. *Vuitton*, 481 U.S. at 805–08, 811–14, 107 S.Ct. at 2136–38, 2139–41; *Polo Fashions*, 760 F.2d at 705; *Ganger*, 379 F.2d at 712, 714; *Heldt*, 668 F.2d at 1275–76; *Eisenberg*, 773 F.Supp. at 703–06; *Carter*, 907 F.2d at 486.

16. *Kinder*, 701 F.Supp. at 492.

17. *Kinder*, 701 F.Supp. at 491; *Hughes*, 711 F.Supp. at 1583–84; *Eisenberg*, 773 F.Supp. at 703–06; *Carter*, 907 F.2d at 406.

prosecute insulated, influential public officials for wrongdoing, or where private citizens resort to private prosecutions in order to deter minor criminal activity such as trespass. However, a trial judge need not await explicit misconduct in the course of a trial in order to determine that, in particular circumstances, a private prosecutor necessarily suffers from such a severe conflict of interest that the potential for misconduct is intolerable. This court is especially concerned with the enormous potential for pre-trial misconduct such as the *Vuitton* Court discussed. The prosecutorial role is too important to taint with obvious conflicts of interest.

> Even if a defendant is ultimately acquitted, forced immersion in criminal investigation and adjudication is a wrenching disruption of everyday life. For this reason, we must have assurance that those who would wield this power will be guided solely by their sense of public responsibility for the attainment of justice.

481 U.S. at 814, 107 S.Ct. at 2141. *See also State v. Corson,* 192 N.J.Super. 612, 615–16, 471 A.2d 818 (Law Div.1983) (dismissing complaint where private prosecutor filed identical complaint four times and failed to prosecute, acknowledging defendant's anxiety and expense, and promoting policy of preventing undue harassment). The only way to assure a criminal defendant a reasonable possibility of a fair "private prosecution" while simultaneously preserving the access to the courts which the New Jersey legislature allows is for the court to weigh the private prosecutor's personal interest and conflict of roles and to make a disqualification determination on that basis.

■ It is possible that in certain circumstances, no private attorney retained by a certain complainant could satisfy a court that the inherent conflict of interest engendered by a private prosecutor's ethical and professional obligations to her client do not pose a conflict. However, as is also evident by this holding, criminal defendants are not automatically entitled to a dismissal merely because the district attorney has neither the time, resources, or inclination to prosecute certain criminal complaints. Disqualification of a problematic private prosecutor is the appropriate pre-trial relief.[18] If ultimately no satisfactory private prosecutor comes forward to pursue the charges, then the defendant would be entitled to a dismissal.

■ In the case at hand, the court concludes that Mr. Foti suffers from an intolerable conflict of interest. As described in the Declaration of defendant Imperiale, Mr. Foti has a history of harassing the defendant with regard to union matters. Imperiale Dec., ¶ 5. In addition, Mr. Imperiale swears that Mr. Foti repeatedly cursed the defendant and was antagonistic towards him, including threats of physical violence. *Id.* at ¶ 7. In the context of this antagonistic personal history, the court takes seriously the fact that Mr. Foti has established the basis for potential administrative and civil complaints against the defendant arising from the same incident as the alleged criminal assault. Mr. Foti has already filed a grievance against the defendant for improper disciplinary action. In addition, Mr. Foti's alleged injury, reinforced by two days of sick leave following the incident, could form the basis for a civil action against the defendant.

Mr. Foti's conflict of interests is indeed "structural" given the ethical and constitutional obligations of private prosecutors. Accordingly, relying on this court's inherent authority to control who may appear before it and this court's inherent authority to disqualify overzealous prosecutors and interested prosecutors plagued by an intolerable conflict of interest, the court disqualifies Mr. Foti and any agents which he may secure on his behalf from prosecuting this complaint and will issue an order to show cause why the complaint should not be dismissed for failure to prosecute.

*Conclusion*

For the foregoing reasons, Mr. Foti and his agents are hereby disqualified from

---

18. *See Heldt,* 668 F.2d at 1276–77 and n. 80 (actual prejudice requirement only where Assistant U.S. Attorney's conflict of interest raised on appeal but not at trial—however, "[g]iven the need to promote the appearance of justice, a trial court on timely motion should disqualify a prosecutor from participating in a criminal action when he has a personal conflicting interest in a civil case" or potential case); *Brotherhood,* 411 F.2d 312, 320 (remedy for reversed conviction is appointment of Assistant U.S. Attorney for new contempt proceeding); *Kean,* Jan. 28, 1988 Trans. at 17–18. *See also Vuitton,* 481 U.S. at 808 n. 18, 107 S.Ct. at 2138 n. 18 (court can always exercise its inherent supervisory power over proceedings and disqualify certain individuals from prosecuting certain cases based on the prosecutor's over-zealousness); *State v. Marshall,* 123 N.J. 1, 176, 586 A.2d 85 (1991) (court can disqualify prosecutor for "nefarious" interest such as personal interest or financial stake in outcome of criminal prosecution); *Eisenberg,* 773 F.Supp. at 705.

prosecuting this action before this court. The court hereby issues an order to show cause why the complaint should not be dismissed for failure to prosecute. If no suitable prosecutor steps forward to prosecute this action within ten (10) days from the date of this opinion, the complaint shall be dismissed.

## ON MOTION FOR RECONSIDERATION

On September 27, 1991, this court filed its Opinion and Order resolving defendant's motion to dismiss the charge against him based on the unconstitutionality of the New Jersey Local Court Rule 7:4–4(b). That rule allows any lawyer and/or person to prosecute criminal misdemeanor charges against a defendant where the state prosecutor has refused to pursue the charge. The court held that the so-called "private attorney general" provision was not unconstitutional. However, the court was deeply troubled by the intolerable probability that the defendant's due process rights could be violated as a result of this particular interested complainant's role as prosecutor. For this reason, the court invoked its supervisory power over who may appear before it and held that the charge would be dismissed within ten (10) days for failure to prosecute unless a sufficiently disinterested party came forward to prosecute this case.

Ten days later, on October 7, 1991, Mr. Gregg Foti filed a letter with the court. Mr. Foti is the original private prosecutor whom this court had disqualified as an interested party with an intolerable conflict of interest. Although the letter is not a sworn affidavit, Mr. Foti's letter contains factual representations which expand and dramatically alter the factual context in which this court made the determination that Mr. Foti should be disqualified as a prosecutor in this matter. Accordingly, by letter dated October 11, 1991, the court informed the parties that the court would treat Mr. Foti's letter as a motion for reconsideration of that disqualification determination. The court further instructed that any response to Mr. Foti's letter should be filed by October 18, 1991.

By letter dated October 17, 1991, the United States Attorney responded as counsel for the defendant, Michael Imperiale. In that letter, counsel made the following argument:

Defendant submits that this Court has not overlooked relevant factual issues or controlling decisions in its Opinion in the captioned matter filed September 27, 1991. The factual issues raised by the complainant do not speak to the Constitutional issues addressed by the Court nor does the complainant dispute that he is an interested prosecutor. Therefore, it is the defendant's position that reargument is not warranted.

This court disagrees. As described in this court's September 27th Opinion, the determination that a prosecutor is interested and suffers from an intolerable conflict of interest depends on the nuances of the factual scenario in which the complaint arose and the relationship between the parties. After reviewing Mr. Foti's latest submission, it is apparent that the court relied on facts and representations which are possibly inaccurate.

Specifically, the court previously noted that Mr. Imperiale had instituted a disciplinary action against Mr. Foti which resulted in suspension, and that Mr. Foti's appeal of that discipline had been denied at stage two of the grievance procedure. 9/27/91 Op. at 749. However, Mr. Foti now informs the court that the grievance was ultimately resolved in favor of Mr. Foti, resulting in compensation for Mr. Foti's lost pay and expungement of any disciplinary record from his personnel file. Defendant does not dispute this factual representation.

In addition, Mr. Foti represents that he will introduce witnesses who will testify as to his professional and businesslike interaction with Mr. Imperiale in the four months prior to the incident, thereby negating Mr. Imperiale's suggestion that Mr. Foti has a history of harassing the defendant with regard to union matters. See 9/27/91 Op. at 757. Mr. Foti also notes that as a result of his injuries from the alleged assault (which are allegedly documented by a doctor), Mr. Foti received injury compensation which the post office did not dispute. If proven true at trial, this could support Mr. Foti's contention—in direct contrast to Mr. Imperiale's—that it was Imperiale who attacked Foti rather than vice-versa.

Based on these undisputed facts and representations by Mr. Foti, the court vacates its prior determination that Mr. Foti is an unfit prosecutor in this case. On that single issue, Mr. Foti's application for reargument is granted. This will afford the court an opportunity to assess the factual disputes and credibility issues which necessarily pervade a disqualification determination.

However, Mr. Imperiale's account of the incident—i.e., that Foti attacked *him*—is so directly contrary Mr. Foti's criminal complaint, that a determination of what actually occurred on the day of the alleged assault is an essential consideration in any disqualification determination. For instance, if Mr. Foti is lying and he himself attacked Imperiale, then Foti is obviously an unfit prosecutor in this case. On the other hand, if Mr. Imperiale is lying, then Mr. Foti may prove his charge of criminal assault. Therefore, since the disqualification determination involves the same considerations and factual disputes as the trial on the merits, the court will reserve on defendant's motion to disqualify Mr. Foti as an interested prosecutor and hold that application until trial.

SO ORDERED.