242 N.J. Super. 367 (1988)
576 A.2d 945
STATE OF NEW JERSEY, PLAINTIFF,
v.
MORTON DOWNEY, JR., DEFENDANT.
Superior Court of New Jersey, Law Division Hudson County.
Decided February 16, 1988.
*369 James D. Orlando, Secaucus Municipal Prosecutor for the State of New Jersey, appearing for plaintiff.
Cathy Fleming, appearing for defendant.
HUMPHREYS, A.J.S.C.
This case involves the novel question of whether a physical assault should be considered de minimus and therefore subject to dismissal under the New Jersey de minimus statute N.J.S.A. 2C:2-11.[1] The defendant is the host of the "Morton Downey, Jr. Show" shown weekday evenings on Channel 9, in Secaucus, New Jersey. During the taping of a show the defendant struck a guest in the face. The guest filed a complaint, charging a simple assault, a disorderly persons offense.
The defendant moves to dismiss the complaint on the ground that the offense was de minimis. The defendant admits the striking but contends that it was trivial.
The court viewed a videotape of the show. The parties filed briefs and argued orally. After due consideration, the court finds that the offense charged is not trivial. Dismissal of this prosecution on a de minimus ground would run counter to basic principles of criminal law and the public interest. The motion for dismissal is denied.

I.
On December 9, 1987 the defendant was taping his weekly discussion program in the Channel 9 television studio in Secaucus. The topic was "The Catholic Church in America  Is it Dead?" Four guest speakers had been invited. Philip Nobile, a former seminarian and columnist for the National Catholic Reporter; Monsignor William Smith, Dean of Saint Joseph's Seminary in Yonkers, New York; Reverend David Toolan, a *370 Jesuit Priest and editor of Commonweal Magazine; and Andrew Humm, a spokesperson for the Coalition for Lesbian and Gay Rights in New York. Mr. Nobile and Monsignor Smith were seated on the stage with the defendant. Father Toolan and Mr. Humm were at a podium located immediately in front of the audience and adjacent to the stage.
Philip Nobile and Andrew Humm were sharply critical of the Catholic Church. The defendant and Monsignor Smith defended the Church. The discussion was vitriolic. At one point the defendant left the stage and went to the podium at which Humm was standing. He and Humm engaged in a face to face confrontation and verbal battle. During the confrontation the defendant stated to Humm, "don't get any of your bodily fluids on me." A natural inference from that comment was that Humm had the disease known as AIDS. Both men then struggled for the hand microphone on the podium. Humm said "Fuck you." The defendant said "Don't you use that language on this show" and struck Humm in the face with a backward motion of his open hand.
The two men were separated by the defendant's security guards. The defendant and Father Toolan then had a physical and verbal encounter. The security guards took Mr. Humm and Father Toolan out of the studio.
The show continued but was not finished due to a bomb threat. Defendant represents that the show has not been and will not be shown.
Humm filed a disorderly persons complaint in the Secaucus Municipal Court charging assault. He also submitted a signed statement to the Secaucus Police Department.
The defendant moved to dismiss the complaint on the ground that Humm's supporting affidavit failed to establish bodily injury, an essential element of the offense. The Municipal Court Judge denied the motion. Thereafter the defendant brought this motion to dismiss the complaint under the de minimus statute. The State opposes the motion.

*371 II.
The New Jersey Code of Criminal Justice provides that the Assignment Judge may dismiss a prosecution of a de minimus infraction. The statute reads:

De minimis infractions. The Assignment Judge may dismiss a prosecution if, having regard to the nature of the conduct charged to constitute an offense and the nature of the attendant circumstances, it finds that the defendant's conduct:
(a) Was within a customary license or tolerance, neither expressly negated by the person whose interest was infringed nor inconsistent with the purpose of the law defining the offense;
(b) Did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction; or
(c) Presents such other extenuations that it cannot reasonably be regarded as envisaged by the Legislature in forbidding the offense. The Assignment Judge shall not dismiss a prosecution under this section without giving the prosecutor notice and an opportunity to be heard. The prosecutor shall have a right to appeal any such dismissal. N.J.S.A. 2C:2-11.
The defendant relies on subsection (b) of the statute. He contends that he struck Humm "only to an extent too trivial to warrant the condemnation of conviction."
A defendant moving to dismiss under the de minimis statute "must accept as true for the purpose thereof the allegations of the charge against him." State v. Brown, 188 N.J. Super. 656, 671, 458 A.2d 165 (Law Div. 1983). The State represents that Humm will testify that he suffered physical pain, a "stinging sensation." The videotape plainly indicates that the defendant acted purposely and knowingly. The above facts establish a disorderly persons offense of simple assault. See N.J.S.A. 2C:12-1(a)(1).
The de minimis statute is relatively new to New Jersey law. See Judge Lenox's comprehensive and scholarly opinion in State v. Brown, supra. The statute was enacted as part of the New Jersey Code of Criminal Justice. The language in the de minimis section was taken from the Model Penal Code adopted by the American Law Institute. Model Penal Code § 2.12. Other states have enacted similar statutes. See Hawaii *372 Rev.Stat. § 702-236 (1972); Me. Rev. Stat. Ann. tit. 17A §§ 12-17 (1975); and the Pa. Stat. Ann. tit. 18 § 312 (1972).
The de minimis statutes have been construed in a number of reported decisions. However, none of the cases involve an assault or other violent criminal or quasi-criminal behavior.
Prosecutions have been dismissed by New Jersey courts when the offenses were: Taking a single sip of beer while attending a church function. State v. Zarrilli, 220 N.J. Super. 517, 532 A.2d 1131 (Law Div. 1987), shoplifting three pieces of bubblegum. State v. Smith, 195 N.J. Super. 468, 480 A.2d 236 (1984); a patron of a buffet taking food from the premises after he had paid for the food. State v. Nevens, 197 N.J. Super. 531, 485 A.2d 345 (Law Div. 1984).
Prosecutions were not dismissed when the offenses were: Theft by deception under $200 through padding of an expense account. State v. Stern, 197 N.J. Super. 49, 484 A.2d 38 (App.Div. 1984); possession of less than one gram of cocaine. State v. Brown, supra; obtaining false affidavits and filing of false reports with law enforcement authorities. State v. Hegyi, 185 N.J. Super. 229, 447 A.2d 1369 (Law Div. 1982).
In other jurisdictions, prosecutions have been dismissed when the offenses were: Prisoners blocking the passage of a prison guard. Commonwealth v. Jackson, 354 Pa.Super. 27, 510 A.2d 1389 (1986); calling a fellow church member "morally rotten" and "lower than dirt." Commonwealth v. Houck, 233 Pa.Super. 512, 335 A.2d 389 (1975). Prosecutions in other jurisdictions were not dismissed when the offenses were: Failing to timely file expense statements in a primary election. State v. Park, 55 Haw. 610, 525 P.2d 586 (1974); possessing less than one gram of cocaine and three secobarbital tablets. State v. Vance, 61 Haw. 291, 602 P.2d 933 (1979); promoting a dangerous drug. State v. Schofill, 63 Haw. 77, 621 P.2d 364 (1980); theft by removing a valueless firearm from an evidence room. Commonwealth v. Gemelli, 326 Pa.Super. 388, 474 A.2d 294 (1984); driving a three wheel vehicle on a public *373 highway for eight seconds while on the revoked list. Commonwealth v. Eliason, 353 Pa.Super. 321, 509 A.2d 1296 (1986).
The above cases illustrate that the courts have not taken an expansive view of the scope of de minimis statutes. That caution is especially warranted in the present case which involves a direct intentional physical attack upon another. Even under an expansive reading of the de minimis statute, such behavior should not be classified as trivial. Furthermore, when the defendant's conduct here is considered in context, it is even farther removed from the trivial. From the inception of his television program the defendant insulted, berated and baited the guests whose views did not coincide with his. The defendant characterized Mr. Nobile as not knowing his ass from his elbow, being full of garbage and demagogic crap, and having only a third grade seminary education. At one point the defendant knelt before Nobile sarcastically pretending to pray. The defendant then crossed himself, ending that religious gesture with the obscene gesture of raising his middle finger. He told Humm that in so doing he was giving an indication of Humm's I.Q. He referred to Humm as "great knowing one" and at one point told him to "ah, shut up and listen."
The more outlandish, vulgar and provocative the defendant acted, the louder were the cheers and applause from the raucous supporters in the audience.
The defendant made no attempt to cool these rising emotions. On the contrary, a trier of fact could easily conclude that the defendant deliberately provoked and baited Nobile and Humm in order to intensify the fervor of his followers. The atmosphere was hyperintense and so filled with hate and anger that Father Toolan characterized the events as a stoning. Indeed, one is reminded of the daily hate sessions in Oceania. See G. Orwell, 1984 (1950).
In that hot house setting it was not strange that violence erupted. Defendant as provoker of that violence bears full responsibility. The show was his. Humm was an invited *374 guest. It was the defendant who advanced on Humm and began the face to face verbal confrontation. Defendant may not have liked Humm's statements, but that affords no justification for a physical attack. State v. Newman, 128 N.J.L. 82, 24 A.2d 206 (Sup.Ct. 1942). In U.S. v. Taylor, 680 F.2d 378, 380 (5th Cir.1982) the court said, "(w)ords, no matter how outrageous, do not legally justify an attack on an individual."
Whether the defendant's television shows meet the standards of civilized behavior one expects from the television industry may be debatable. See the critical article in Time Magazine of January 4, 1988. What is not debatable is that television discussion shows must not be laced with violence and incitement to violence.
Dismissing this prosecution would send a clear message that "anything goes" on such programs, even physical attacks by the host on his guests. A fundamental purpose of the criminal law is to insure public safety by deterring criminal and anti-social conduct. See N.J.S.A. 2C:1-2. A failure to prosecute under the facts here clearly erodes that deterrent effect.
The defendant argues that the complaint should be dismissed because of his past accomplishments in life as a "singer, songwriter, stage performer, recording artist, businessman, sportsman, author, actor, world traveler, humanitarian, political lobbyist and radio and television personality." That background is counterbalanced by the defendant's conviction some three decades ago for writing checks on accounts which had insufficient funds. He admits that he was sentenced to 90 days in jail and served 60.
In sentencing, a defendant's background may be taken into account as a mitigating factor. See N.J.S.A. 2C:44-6(b). However, a defendant's background has little value in determining whether a violent offense is trivial. A physical assault is a physical assault. It is not reduced to triviality by the fact that a person with a good background commits it.
*375 Moreover, in construing the de minimis statute the court must bear in mind our tripartite system of government. Enforcement of the criminal law is the province of the executive. The prosecutor has broad discretion as to when and when not to prosecute. See In re Ringwood, 65 N.J. 512, 516, 324 A.2d 1 (1974) and State v. Leonardis, 73 N.J. 360, 381, 375 A.2d 607 (1977). That discretion is not subject to interference from the courts except in cases of arbitrariness or abuse. See Ringwood, supra, 65 N.J. at 516, 324 A.2d 1.
The Legislature by enacting the de minimis statute has given the judiciary a role to play in determining whether certain offenses should be prosecuted, but only under the limited circumstances set forth in the statute. Courts must be careful not to enlarge their authority and thereby encroach upon the primary authority of the executive branch of government to enforce the criminal laws.
A case illustrating that principle is People v. Stewart, 52 Mich. App. 477, 217 N.W.2d 894, 895-897 (1974). The trial court had dismissed a criminal narcotics charge holding: "If it is less than three grains, according to my prior policy statement, the case is going to be dismissed ... The court indicated that minor narcotic cases create docket control problems."
Michigan did not have any de minimis statute. The Court of Appeals held that authority to initiate criminal prosecutions rests solely with the prosecutor. Dismissal over his objection, absent a permissive statute, is precluded. Only where the evidence is insufficient is the court empowered to dismiss over prosecutorial objection. People v. Stewart, supra at 897, 217 N.W.2d 894.
In this case the prosecutor could have administratively dismissed the complaint, see R. 3:25-1: or the prosecutor could have moved before the court for a dismissal in the interest of justice. The prosecutor did neither, since, in his opinion, the case warranted prosecution. That opinion is well supported. The prosecutor persuasively argues that permitting a talk show *376 host to augment his arguments with violence poses unacceptable risks of harm to the public. After watching the program, the court can readily understand this argument. The defendant stoked the emotions of the audience to a fever pitch. He and others in the studio were fortunate that his actions did not provoke violence on a much greater scale.
Too much violence and hate permeate our culture. As Supreme Court Justice Thurgood Marshall said, "there is too much crime, too much killing, too much hatred in this country ... the streets of the nation's cities inspire fear and despair, rather than pride and hope." Furman v. Georgia, 408 U.S. 238, 370-371 n. 163, 92 S.Ct. 2726, 2793 n. 163, 33 L.Ed.2d 346, 424 (1972) (Concurring Opinion).
Judges who deal daily with the rising tide of domestic violence know that violence and hatred occur at home as well as in the streets. The courts should not condone such behavior in television studios as well. The incident is clearly not trivial.
The motion to dismiss is denied.
NOTES
[1] This is a refinement of an oral opinion.