**STATE OF NEW JERSEY, Plaintiff,**

v.

**Michael BAZIN, Defendant.**

**Crim. No. 95–378.**

United States District Court, D. New Jersey.

Dec. 21, 1995.

Thomas B. Lewis and Perry S. Warren, Stark & Stark, Princeton, New Jersey, for Complainant Evette A. Utley–Williams.

James B. Clark, III, Assistant U.S. Attorney, Trenton, New Jersey, for Defendant Michael Bazin.

### OPINION

KUGLER, United States Magistrate Judge:

This is a criminal action brought by a private citizen, Evette Utley–Williams ("Complainant"), against a United States Postal Service inspector, Michael Bazin, for harassment and simple assault allegedly oc-

curring during the course of Bazin's employment on July 11, 1995. As a result of a theft of $70,000 in cash from the Trenton Post Office in Hamilton Township, New Jersey in May, 1995, Defendant and several other postal inspectors began an investigation. They interviewed the postal workers who were on duty on the day of the theft and decided that they would conduct polygraph tests on some of these workers. One of these workers, Edgar Paulus, arrived at the site of the polygraph test on July 10, 1995 accompanied by his union representative, the Complainant. Mr. Paulus refused to take the test upon the advice of the Complainant. There was a 30–minute argument, after which Mr. Paulus and Ms. Utley–Williams rose to leave.

According to Ms. Utley–Williams, as she was leaving, Defendant Bazin said to her in a sarcastic and threatening manner, "I want to thank you for all of your cooperation in this investigation. Just remember, what goes around, comes around." She asked if that was a threat. She certifies that Defendant Bazin "responded by slamming the metal door to his office against the left side of my body, making contact with my body, with the intent of causing bodily harm to me." She said, "So, you are going to be violent, too?" and he responded "I would if I could." (Utley–Williams Aff.)

She filed a complaint with the Hamilton Township Municipal Court, alleging that Defendant Bazin harassed her in violation of N.J.S.A. § 2C:33–4(a) and committed simple assault in violation of N.J.S.A. § 2C:12–1(a)(1). The U.S. Attorney's Office undertook representation of Bazin and removed this matter to federal court. The Hamilton Township prosecutor, the Mercer County Prosecutor, and the New Jersey Attorney General's office all refused to prosecute the matter. Complainant's union then retained the firm of Stark & Stark to prosecute the action on behalf of the State of New Jersey. Defendant moves to dismiss the case on three grounds: (1) prosecution of the case by a private attorney violates the defendant's due process rights; (2) the charges are *de minimis;* and (3) the defendant, as a federal officer, is immune from prosecution for the charges brought under state law.

## I. *PROSECUTION BY PRIVATE ATTORNEY*

Defendant argues that the prosecution by the complainant's private attorney violates his right to due process and a fair trial because that attorney's loyalties and self-interest are inextricably tied to those of the complaining witness, and, thus, the attorney is not the "disinterested prosecutor" to which the defendant is entitled.

The constitutional concerns arising from private criminal enforcement have been discussed by the United States Supreme Court, federal courts in the District of New Jersey, and New Jersey state courts. In *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987), the United States Supreme Court reversed a criminal contempt conviction of individuals found to have violated an injunction because the attorney appointed by the District Court to prosecute the contempt was the same attorney who was involved in the underlying civil trademark litigation. The Court first explained why a contempt proceeding was subject to the same criminal procedure protections as those actions brought under general criminal laws, and then distinguished the role of the prosecutor with that of the private litigant and found a tension between the two. "The Government's interest is in dispassionate assessment of the propriety of criminal charges for affronts to the Judiciary. The private party's interest is in obtaining the benefits of the court's order. While these concerns sometimes may be congruent, sometimes they may not." *Id.* at 805, 107 S.Ct. at 2136.

While expressing no opinion on whether there was *actual* prosecutorial impropriety, the Court found it sufficient that the appointment of the interested lawyer created the *potential* for private interests to influence the discharge of public duty. The trademark litigation brought by Vuitton resulted in the injunction and a consent decree which contained a liquidated damages provision of $750,000 for violation of the injunction, and the prospect of such a damages award had the potential to influence whether the particular defendants were selected as a target of an investigation and whether plea bargains

or immunity would be offered. In addition, the interested attorney was a defendant in a defamation action brought by one of the contempt proceeding defendants, creating the possibility that the criminal investigation was shaped in part by a desire to obtain information useful in the defamation action. Finally, as Vuitton had various civil claims pending against some of the criminal defendants, this could have created the temptation to use the criminal investigation to gather information for the civil suits and to use the civil suits as bargaining leverage in obtaining pleas in the criminal prosecution. *Id.* at 805–06, 107 S.Ct. at 2136–37. "A scheme injecting a personal interest, financial or otherwise, into the enforcement process may bring irrelevant or impermissible factors into the prosecutorial decision." *Id.* at 808, 107 S.Ct. at 2138 (quoting *Bloom v. Illinois*, 391 U.S. 194, 207, 88 S.Ct. 1477, 1485, 20 L.Ed.2d 522 (1968)).

Because of the wrenching intrusion that a criminal investigation can have upon an individual's life, the Court stated:

> [W]e must have assurance that those who would wield this power will be guided solely by their sense of public responsibility for the attainment of justice. A prosecutor of a contempt action who represents the private beneficiary of the court order allegedly violated cannot provide such assurance, for such an attorney is required by the very standards of the profession to serve two masters.

*Id.* at 814, 88 S.Ct. at 2141. Although Justice Blackmun in his concurrence stated that he would find the appointment of an interested party's counsel to prosecute for criminal contempt to be a violation of due process, the majority avoided the constitutional question by exercising its supervisory power to reverse the conviction.

■ Neither the Federal Rules of Criminal Procedure nor the Local Rules provide for criminal prosecution by private litigants or attorneys. New Jersey Court Rule 7:4–4(b), however, provides:

> (b) Appearance of Prosecution. Whenever in his or her judgment the interests of justice so require, or upon the request of the court, the Attorney General, county prosecutor, municipal court prosecutor, or municipal attorney, as the case may be, may appear in any court on behalf of the State, or of the municipality, and conduct the prosecution of any action, but if the Attorney General, county or municipal court prosecutor or municipal attorney does not appear, any attorney may appear on behalf of any complaining witness and prosecute the action for and on behalf of the State or the municipality.

The federal courts that have discussed the application of Rule 7:4–4(b) are unanimous in holding that the rule contains both substantive and procedural rights, allowing a complaining witness who is the victim of a disorderly persons offense to enforce the criminal law in cases where the state or municipality lacks the resources to do so. *New Jersey v. Imperiale*, 773 F.Supp. 747, 748 (D.N.J.1991); *New Jersey v. Kinder*, 701 F.Supp. 486, 488 (D.N.J.1988); *Voytko v. Ramada Inn of Atlantic City*, 445 F.Supp. 315, 328 n. 21 (D.N.J.1978). As such, and because there is no conflicting federal rule, Rule 7:4–4(b) applies in a criminal case which is removed from state to federal court. The rule has been considered important because "absent its use, disorderly persons offenses would go unprosecuted, harming not only the state's interest in enforcing its laws, but also the victim's (if not society's) interest in obtaining satisfaction for wrongs committed." *New Jersey v. Kinder*, 701 F.Supp. at 488. *See also State v. Storm*, 141 N.J. 245, 251–52, 661 A.2d 790, 793–94 (1995).

The hazards of the rule also have been pointed out:

> The risk of abuses from such practice is equally obvious. Individuals can and do utilize such criminal proceedings to bolster a related civil proceeding or merely for vindictive or harassing purposes. In addition to possible improper initiation, the conduct of such proceedings risks a violation of due process. The strictures which guide and limit a prosecutor are unknown to the private citizen and are difficult to enforce. Plea bargains which are otherwise available would not be. Duties of disclosure and other constitutional safeguards likewise would be unknown and

unenforced. Thus, in the initiation and the conduct of such private prosecutions, the self-interest of the complainant-prosecutor, absent the safeguards imposed upon a neutral prosecutor, place the constitutional rights of the named defendant in jeopardy.

*New Jersey v. Imperiale,* 773 F.Supp. at 748. *See also State v. Storm,* 141 N.J. at 252–53, 661 A.2d at 794.

■ To balance the benefits and the risks of Rule 7:4–4(b), its proper application requires a court to evaluate the particular circumstances to determine if the private attorney has a conflict of interest which impinges upon a criminal defendant's due process rights so as to prevent the defendant from receiving a fair trial. *New Jersey v. Imperiale,* 773 F.Supp. at 751; *New Jersey v. Kinder,* 701 F.Supp. at 490–92; *State v. Storm,* 141 N.J. at 255, 661 A.2d at 795. If a court finds a conflict, the appropriate procedure would be to disqualify the private attorney, and if no satisfactory private prosecutor subsequently comes forward, then the court may dismiss the complaint. *New Jersey v. Imperiale,* 773 F.Supp. at 754, 756. This evaluation primarily involves an inquiry into the private attorney's pecuniary or other interest in the outcome of the criminal case and whether the attorney is involved in a related civil case. *Id.*

■ The New Jersey Supreme Court in *State v. Storm, supra,* held that a private attorney wishing to prosecute a criminal action under Rule 7:4–4(b) must disclose in a written certification all facts that foreseeably may affect the fairness of the proceedings.[1] 141 N.J. at 255, 661 A.2d at 795. The relevant facts include the identity of the complainant, indicating (1) whether the complainant is an individual, a business, or an entity with its own police department; (2) any actual conflict of interest arising from the attorney's representation of, and fee arrangement with, the complainant; (3) any civil litigation, existing or anticipated, between the complainant and the defendant; (4) whether the

defendant is, or is expected to be, represented by counsel; and (5) any other facts that reasonably could affect the impartiality of the prosecutor and the fairness of the proceedings or otherwise create the appearance of impropriety. *Id.*

■ Counsel for the complainant, Thomas B. Lewis, Esquire, has submitted such a certification. He explains that Ms. Utley–Williams requested that Stark & Stark represent her in this criminal matter and that the union, Trenton Metro Area Local, American Postal Workers Union, agreed to pay legal fees based on Stark & Stark's regular hourly rate. Stark & Stark does not represent Ms. Utley–Williams or the Trenton Metro Area Local in any other matter, and it has not been requested to represent them in any related civil action against Mr. Bazin. There is no existing civil litigation between Ms. Utley–Williams and Defendant Bazin, and Mr. Lewis is unaware of any contemplated civil litigation. Other than the hourly rates, Stark & Stark has no other pecuniary interest in the outcome of the criminal litigation. Mr. Lewis states that to the best of his knowledge there are no other facts that affect the impartiality of the prosecutor, the fairness of the proceedings, or otherwise create an appearance of impropriety.

Defendant initially argues that Stark & Stark should be disqualified because the interests of Ms. Utley–Williams ("i.e. her interest in foiling or stalling an investigation into a theft at a postal facility that may ultimately involve as witnesses members of her union") are in direct conflict with the defendant's right to an independent prosecutor and the public's interest in avoiding the appearance of impropriety in actions invoking the power of the state. The defendant is mistaken in his characterization of the complainant's interests. Her interests for purposes of this matter are to be free from harassment and assault. This does not conflict with the defendant's right to a fair trial, nor does it give

---

1. The court expressed concern over the constitutional ramifications of the rule, despite its longstanding acceptance in New Jersey courts, and requested the Committee on Municipal Courts to recommend guidelines governing the appointment of private prosecutors in those courts. The holding by the court in *State v. Storm* remains in force only until the court adopts such guidelines. 141 N.J. at 254–55, 661 A.2d at 795.

rise to a conflict of interest with respect to her attorney.

Defendant also argues that the fact that the complainant's attorney is getting paid for his representation of the complainant creates a conflict of interest which warrants his disqualification. He cites *New Jersey v. Kean*, Crim. No. 87–439, 87–440 (January 28, 1988), a transcript of which is attached to his moving papers as Exhibit B, and urges the court to follow its reasoning. A careful reading of *Kean*, however, indicates that its reasoning does not support the defendant's position. In *Kean*, Judge Brown issued an order from the bench disqualifying the complainant's counsel from private prosecution. Although the court found that under *Vuitton* and its progeny, a federal court follows federal rules in determining who can prosecute a criminal action, the disqualification was based on the fact that the private attorney in *Kean* also represented the complainant in a related civil action and in a related state prosecution against the complainant. Thus, the private attorney was not a "disinterested prosecutor." This is the same conclusion that likely would be made under application of Rule 7:4–4(b). The mere fact that a private attorney is getting paid for his services does not create an impermissible conflict of interest.

Finally, Defendant argues that Mr. Lewis faces a direct conflict between his professional obligations to his client and his obligations to the public interest in his role as a prosecutor. This argument, however, merely restates the reasons why federal and New Jersey courts have required an inquiry into an attorney's potential for a conflict of interest which may result in constitutional infirmities—it does not itself establish such a conflict.

Rule 7:4–4(b) has been upheld as constitutional, and the mere fact that a private attorney is getting paid does not create a conflict of interest that is so severe as to intrude upon a defendant's constitutional rights. There is no evidence that Ms. Utley–Williams has any other pending or imminent action against Defendant Bazin. Neither Mr. Lewis nor Stark & Stark have represented Ms. Utley–Williams or the union before. There is no indication that Mr. Lewis' fee is contin-

gent. The circumstances do not appear to present an intolerable conflict of interest that would rise to a violation of Defendant's due process rights. The defendant's motion to dismiss on this ground shall be denied.

## II. *DE MINIMIS*

Defendant also moves to dismiss on the grounds that the alleged conduct is *de minimis*, and, as such, the charges may be dismissed under N.J.S.A. § 2C:2–11. This provision reads in relevant part:

**2C:2–11. De minimis infractions.**

The assignment judge may dismiss a prosecution if, having regard to the nature of the conduct charged to constitute an offense and the nature of the attendant circumstances, it finds that the defendant's conduct:

.    .    .    .    .

b. Did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction; or

c. Presents such other extenuations that it cannot reasonably be regarded as envisaged by the Legislature in forbidding the offense.

.    .    .    .    .

N.J.S.A. § 2C:2–11. The defendant cites *State v. Smith*, 195 N.J.Super. 468, 480 A.2d 236 (Law Div.1984) (charges dismissed as *de minimis* where defendant stole three pieces of bubble gum from convenience store), *State v. Nevens*, 197 N.J.Super. 531, 485 A.2d 345 (Law Div.1984) (charges against defendant for stealing several pieces of fruit from casino buffet for which the defendant had paid were dismissed as *de minimis* ), and *State v. Zarrilli*, 216 N.J.Super. 231, 523 A.2d 284 (Law Div.1987), *aff'd*, 220 N.J.Super. 517, 532 A.2d 1131 (App.Div.1987) (charges dismissed as *de minimis* where underage defendant took one sip of beer from companion's cup at church function).

Complainant argues that while the courts in the cases discussed above properly dismissed charges based upon minor infractions involving non-violent behavior, the alleged conduct of Defendant Bazin is not *de minim-*

*is,* as it involves threats, harassment, intimidation, and assault. Complainant cites *State v. Downey,* 242 N.J.Super. 367, 576 A.2d 945 (Law Div.1988), in which the court refused to dismiss charges of assault against talk show host Morton Downey, Jr., for striking a guest in the face during a heated onstage argument. The court noted that none of the reported cases under the *de minimis* statute involved an assault or other violent criminal or quasi-criminal behavior and indicated that because the claimant's charges are taken as true for the purposes of a such a motion, dismissal of charges as *de minimis* may be inappropriate in cases involving assault. In its denial, the court considered the background of the defendant, the risk of harm to the public if the conduct went unpunished, and the particular factual circumstances surrounding the assault, finding that even though the defendant merely slapped his guest and caused a "stinging sensation," it was a direct intentional physical attack upon another which warranted denial of the defendant's motion to dismiss on *de minimis* grounds.

■ There is no counterpart to New Jersey's *de minimis* statute in the Federal Rules of Criminal Procedure, the Local Rules, or any other federal statute. The court has found no federal cases which addressed a motion to dismiss criminal charges on *de minimis* grounds.[2] However, the discussions by the United States Supreme Court and various circuit courts of the law to be applied under the federal officer removal statute, 28 U.S.C. § 1442, indicate that New Jersey's *de minimis* statute applies, and the court finds that its application warrants dismissal of the complainant's harassment charge, but not the assault charge.

■ The Supreme Court in *Arizona v. Manypenny,* 451 U.S. 232, 101 S.Ct. 1657, 68 L.Ed.2d 58, *reh'g denied,* 452 U.S. 955, 101 S.Ct. 3100, 69 L.Ed.2d 965 (1981), decided the issue of whether the State of Arizona had the right to appeal a district court's judgment of acquittal after a guilty verdict had been rendered against a United States Border Patrol Agent who had shot a fleeing suspected illegal alien on federal lands. The Ninth Circuit had dismissed the state's appeal, reasoning that although the state had a clearly established right to appellate review under Arizona law, it had no such right under federal law, and federal law exclusively governed the proceedings that had been removed pursuant to 28 U.S.C. § 1442. The Supreme Court corrected the appellate court's reasoning: "But a state criminal proceeding against a federal officer that is removed to federal court does not 'arise under federal law' in this pre-empting sense. Rather, the federal court conducts the trial under federal rules of procedure while applying the criminal law of the State."[3] *Id.* at 241, 101 S.Ct. at 1664. While removal under 28 U.S.C. § 1442 allows a trial upon the merits of a state-law question free from local interests or prejudice and permits a federal officer to have an immunity defense adjudicated in federal court, it does not revise or alter the underlying law to be applied. "In this respect, it is a purely derivative form of jurisdiction, neither enlarging nor contracting the rights of the parties.... Thus, while giving full effect to the purpose of removal, this Court retains the highest regard for a State's right to make and enforce its own criminal laws." *Id.* at 242–43, 101 S.Ct. at 1664–65. *See also Guidry v. Durkin,* 834 F.2d 1465 (9th Cir.1987); *City of Aurora v. Erwin,* 706 F.2d 295 (10th Cir.1983) (defendant retains right to a jury trial under Colorado law in removal proceeding under 28 U.S.C. § 1442).

■ It is clear that New Jersey's *de minimis* statute involves more than just criminal procedure. *See State v. Brown,* 188 N.J.Super. 656, 458 A.2d 165 (Law Div.1983) (dis-

**2.** Defendant cites two district court opinions in which the court supposedly found *de minimis* conduct which could not serve as the basis for criminal liability, but those opinions were not attached and are unreported. *New Jersey v. Lotsey,* Mag. No. 91–0037J–01 (D.N.J. June 9, 1992); *Krowl v. United States,* Civ. No. 89–1420 (D.N.J. August 17, 1990).

**3.** Interestingly, while stating the broad rule that federal procedural rules and state substantive rules apply in § 1442 removal proceedings, the Court in *Manypenny* did not explain why the state's right to appeal was more than just procedural.

cussing legislative history of N.J.S.A. § 2C:2–11 and finding its purpose to prevent absurd application of New Jersey's criminal laws); *State v. Sorge,* 249 N.J.Super. 144, 591 A.2d 1382 (Law Div.1992) (finding from legislative history that N.J.S.A. § 2C:2–11 is new idea in substantive criminal law). It entitles a defendant to have charges against him or her dismissed when, under the policy of the New Jersey legislature, the conduct is considered trivial. This statute would be available to Defendant Bazin if he were being prosecuted in a New Jersey court. This statute encompasses substantive rights under the criminal laws of New Jersey and, because there is no conflicting federal statute, *Arizona v. Manypenny* dictates that N.J.S.A. § 2C:2–11 should be applied in this removal proceeding.

When a *de minimis* motion is addressed, the court must assume as true the conduct as alleged in the complaint. *State v. Zarrilli, supra,* 216 N.J.Super. at 236, 523 A.2d at 286. A determination of guilt or innocence is not required. *Id.* Charges may be dismissed if the defendant's conduct "[d]id not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense" or did so "only to an extent too trivial to warrant the condemnation of conviction." N.J.S.A. § 2C:2–11. The second inquiry—what is "trivial"—involves a determination of the risk to the public. *Id.* at 239, 523 A.2d at 288. Subordinate factors include: (a) the circumstances surrounding the commission of the offense; (b) the existence of contraband; (c) the amount and value of property involved; (d) the use or threat of violence; and (e) the use of weapons. *Id.*

### A. *Harassment*

Complainant charges Defendant Bazin with harassment under N.J.S.A. § 2C:33–4(a). This provision reads:

**2C:33–4 Harassment**

Except as provided in subsection d., a person commits a petty disorderly persons offense if, with purpose to harass another, he:

a. Makes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively course language, or any other manner likely to cause annoyance or alarm; ...

The communications at issue are Defendant's statements at the conclusion of the attempted interrogation of Mr. Paulus: "I just want to thank you for your cooperation. Just remember, what goes around, comes around" and "I would if I could," when asked whether he would resort to violence. Even when taken as true and as a whole, the court finds that these communications do not constitute the harm sought to be prevented by subsection (a) of New Jersey's harassment statute. "A person is indictable under subsection (a) only if that person makes a communication (or communications) using one of the enumerated methods and that person specifically intends thereby to harass the intended recipient of the communication." *State v. Mortimer,* 135 N.J. 517, 536, 641 A.2d 257, 266 (1994). There is no reasonable basis to conclude that Bazin's statements were made in offensively course language or were intended to harass Ms. Utley–Williams. Under the statute, a defendant is permitted to communicate ill will, hatred, or bias to others, but he or she is prohibited from acting upon such sentiments in a harassing manner. *Id.* at 528, 641 A.2d at 262. Indeed, Bazin's statement that he would use violence "if he could" suggests that he did not intend to do anything prohibited by law. While his statements may not have been professional or pleasant, they do not rise to the level of harassment.

To the extent they would rise to the level of harassment, New Jersey law supports a finding that they are too trivial to warrant the condemnation of conviction. *See State v. Long,* 266 N.J.Super. 716, 630 A.2d 430 (Law Div.1993) (defendant's unobtrusive attempts at determining judgment debtor's assets and his statement "trick or treat" while serving debtor order of discovery does not support harassment conviction absent evidence of intent to annoy or threaten debtor); *Peranio v. Peranio,* 280 N.J.Super. 47, 654 A.2d 495 (App.Div.1995) (husband's statement during divorce proceeding that he was going to "bury" his wife when he discovered that she

had disposed of some property did not constitute harassment where judge found, although statement was objectively alarming, there was no evidence that husband intended to harass his wife and there was no history of threats, harassment, physical or mental abuse or violence); *Roe v. Roe*, 253 N.J.Super. 418, 601 A.2d 1201 (App.Div.1992) (husband's threat to kill his wife did constitute harassment under the statute). For these reasons, the defendant's motion to dismiss the harassment charge of the complaint on *de minimis* grounds shall be granted.

B. *Assault*

Complainant also charges Defendant Bazin with simple assault under N.J.S.A. § 2C:12–1(a). This provision reads:

**2C:12–1 Assault**

a. **Simple Assault.** A person is guilty of assault if he:

(1) Attempts to cause or purposely, knowingly or recklessly causes bodily injury to another; ...

The conduct alleged in the complaint is the "shoving of the door into the left side" of the complainant's body as she was leaving the meeting. Complainant certifies that Defendant "slammed the metal door to his office" against her body, making contact, with the intent of causing bodily harm to her. (Utley–Williams Aff., para. 6.)

▮▮▮ Taking the complainant's allegations as true, the court finds that a *de minimis* finding is inappropriate for the assault charge. Even the slightest physical contact, if done intentionally, is considered a simple assault under New Jersey law. *See State v. Downey, supra* (purposeful and knowing slap causing stinging sensation established disorderly persons offense of simple assault). The court in *Downey* emphasized the narrow construction of the *de minimis* statute as it is applied to charges involving violence:

[C]ourts have not taken an expansive view of the scope of the *de minimis* statute. That caution is especially warranted in the present case which involves a direct intentional physical attack upon another. Even under an expansive reading of the *de minimis* statute, such behavior should not be classified as trivial.

242 N.J.Super. at 373, 576 A.2d at 948. The record supports a finding that the complainant and the defendant were involved in an antagonistic situation. Defendant Bazin was unhappy with the result of the failed attempt at interrogating Mr. Paulus, and the failure was primarily due to the position and advice of the complainant, as a representative of Mr. Paulus' union. Although Defendant Bazin maintains that he had no intention of causing injury to the complainant, that he merely closed the door, and that as it was piston-pressurized, it could not have slammed against the complainant's body, the court's role for purposes of this motion is not to determine the merits. When considering the risk to the public as an indication of what would constitute "trivial" behavior, this court observes that it would be a great disservice to the public trust to allow public officials to use violence to compel individuals to comply with federal investigations. Because factual issues remain in dispute, and because New Jersey broadly interprets the crime of simple assault and narrowly interprets the *de minimis* statute, the defendant's motion to dismiss the complainant's assault charges on the grounds of *de minimis* conduct shall be denied.

III. *IMMUNITY*

Defendant's final argument in support of his motion to dismiss is that he is immune from state criminal prosecution under *In re Neagle*, 135 U.S. 1, 10 S.Ct. 658, 34 L.Ed. 55 (1890), because: (1) his actions were those of a federal officer in the performance of an act which he was authorized by federal law to do as part of his duty; and (2) the actions were "no more than was necessary and proper for him to do." *Id.* at 75, 10 S.Ct. at 672. *See Baucom v. Martin*, 677 F.2d 1346 (11th Cir. 1982) (FBI agent entitled to immunity from state prosecution for attempted bribery where agent conducting official investigation of target of bribe attempt); *Clifton v. Cox*, 549 F.2d 722 (9th Cir.1977) (federal narcotics officer immune from state murder prosecution in fatal shooting of fleeing suspect); *Commonwealth of Kentucky v. Long*, 637 F.Supp. 1150 (W.D.Ky.1986) (FBI agent immune from prosecution for complicity in bur-

**116**

glaries committed by FBI informant), *aff'd,* 837 F.2d 727 (6th Cir.1988).

In *Neagle,* a federal marshal assigned by the Attorney General to protect Supreme Court Justice Field shot and killed a man who assaulted the Justice. The state of California sought to prosecute the marshal for murder. On appeal from the issuance of a writ of *habeas corpus* discharging the marshal, the Court found that although the specific duty of protecting a Justice was not expressly authorized by statute, it was considered to be within the general scope of the marshal's duties. "[I]f the prisoner (the marshal) is held in the state court to answer for an act which he was authorized to do by the law of the United States, which it was his duty to do as marshal of the United States, and if in doing that act he did no more than what was necessary and proper for him to do, he cannot be guilty of a crime under the law of the State of California." *Id.* at 75, 10 S.Ct. at 672.

 The two questions under *Neagle* and its progeny are whether the defendant was acting within the scope of his authority when he allegedly assaulted the complainant and whether that assault was necessary and proper to the discharge of his duties in investigating mail fraud. This inquiry involves both objective and subjective elements. *Clifton v. Cox,* 549 F.2d 722 (9th Cir.1977). An error of judgment is not enough to establish criminal responsibility, *id.,* but a federal officer loses his *Neagle* protection when he acts out of personal interest, malice, or with criminal intent. *Baucom v. Martin, supra.*

The complainant makes a persuasive argument that as the attempted interrogation of Paulus was concluded at the time of the alleged conduct, Defendant could not have reasonably believed that the acts were within the scope of his duties in investigating mail fraud or were necessary and proper to the discharge of those duties. Further, even if the assault was considered arguably within the scope of his authority in investigating mail fraud, the defendant had no duty or authorization to assault the union representative rather than the subject of the interrogation. For these reasons, the court finds that the defendant is not entitled to *Neagle* pro-

tection for his alleged assault upon the complainant, and his motion to dismiss the assault charge against him based on immunity grounds shall be denied.

*CONCLUSION*

For the reasons discussed above, Defendant Bazin's motion to dismiss the harassment charge against him shall be GRANTED, and his motion to dismiss the assault charge against him shall be DENIED.