# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2315-22

L.D.,[1]

    Plaintiff-Respondent,

v.

J.D.,

    Defendant-Appellant.

_____

Submitted May 1, 2024 – Decided May 10, 2024

Before Judges Firko and Vanek.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FV-04-2223-23.

Evan F. Nappen, Attorney at Law, PC, attorney for appellant (Louis P. Nappen, on the brief).

Shilton Law, attorneys for respondent (A. Victoria Shilton, on the brief).

PER CURIAM

---

[1] We use initials to protect the confidentiality of the parties. R. 1:38-3(d)(10).

Defendant J.D. appeals from a February 21, 2023 final restraining order (FRO) entered in favor of his ex-wife, plaintiff L.D., pursuant to the Prevention of Domestic Violence (PDVA), N.J.S.A. 2C:25-17 to -35, based on the predicate act of assault, N.J.S.A. 2C:12-1(a).[2]

On appeal, defendant contends there is insufficient evidence supporting the judge's finding he committed the predicate act of assault, and therefore, the judge erred in concluding an FRO is necessary to protect plaintiff from future acts of domestic violence. We affirm.

I.

The facts were established at the one-day bench trial conducted in February 2023. Represented by counsel, plaintiff testified on her own behalf and introduced into evidence several exhibits. Defendant was also represented by counsel and testified on his own behalf but did not move any items into evidence. No other witnesses testified for either party.

The parties were married in 2009 and got divorced in 2014. They have two daughters, born in 2009 and 2011. On January 24, 2023, plaintiff filed a domestic violence complaint against defendant and was issued a temporary

---

[2] Defendant obtained a cross-TRO against plaintiff under docket number FV-04-2234-23, which was dismissed after trial. Defendant is not challenging that ruling on appeal.

A-2315-22

restraining order (TRO). Plaintiff alleged that on January 24, 2023, during a child custody exchange, defendant entered her home, spit on her, and shoved her to the ground, leaving a "red mark" on plaintiff's right arm. On February 6, 2023, plaintiff amended her complaint to state that defendant "threatened to have [her] chihuahua put down because [the dog] snapped at him when he was assaulting [her]."

The amended complaint also included a prior history of domestic violence. Plaintiff alleged that on November 24, 2022, defendant entered her home without permission, started a verbal argument, threw a glass at her, and called her an "a******." On May 8, 2022, which was Mother's Day, when plaintiff went to defendant's house to drop the girls off for parenting time, she stated their belongings were thrown onto his front lawn, and defendant said he "never wanted to see the girls again."

Sometime in the Winter of 2015, plaintiff alleged during an ongoing dispute about parenting time, defendant drove his car onto her front lawn, got out of the car screaming and yelling, and told her that he would set a parenting schedule, "over [his] dead bod[y]." A few days later, plaintiff alleged sometime after midnight, while she was in bed sleeping, she woke up and saw defendant standing over her screaming he can take the kids "whenever he wants." Plaintiff

A-2315-22

stated a few days later defendant showed up at her "house banging on the front door, yelling about the same thing." According to plaintiff, this time defendant "broke the window in [her] front door."

Plaintiff also alleged that since the parties' divorce, defendant forces his way into her home, regularly harasses her by threatening to withhold child support, spits at her in anger, and calls her "offensive and vulgar names." In addition, plaintiff alleged defendant "has pinned" her against furniture, and "intimidate[s]" her by "getting in[] [her] face" during a disagreement.

On December 25, 2013, during an argument, plaintiff alleged that defendant "hit" her "in the head repeatedly." Plaintiff alleged defendant "assaulted" her previously by "slamming [her] head into the wall," grabbing her by the hair, and "smash[ing] [her] head into the floor," resulting in the issuance of a prior TRO.[3] Plaintiff alleged other prior instances of violence such as when defendant grabbed her by the hair, called her an "ungrateful c*** b****," threw her to the floor, got on top of her and held her down, grabbed the phone from her as she dialed 9-1-1, and refused to give one of the daughters back to her when she was a baby.

---

[3] This TRO was dismissed during trial by plaintiff, and a civil restraints agreement was entered into by the parties under the dissolution docket number.

At trial, plaintiff testified as to the allegations set forth in her complaints. After defendant spat into her face, plaintiff testified she pushed him away in self-defense and he threw her to the ground. Plaintiff explained that the assault did not result in a bruise to her arm but caused her pain.

Plaintiff testified that defendant's abuse started in 2009 before they got married. Just prior to their wedding, plaintiff testified she was pregnant with the parties' oldest daughter and defendant forced her to go to his uncle's birthday party. In the car on the way to the party, defendant got angry, punched plaintiff in the arm, and spit in her face. According to plaintiff's amended complaint, a few weeks later, while she was still pregnant and not feeling well, defendant threw her over his shoulder onto the bed and tried to rip off her pajamas to coerce her to get dressed for a meeting with a priest before the wedding.

During her second pregnancy, plaintiff testified defendant picked her up, threw her down to the ground, pinned her against the stove, and struck her. On one occasion, plaintiff testified that defendant chased after her with an axe while she was sitting in the car and broke the side view mirror with it.

Eight years following the divorce, plaintiff testified that she still feels "under [defendant's] control." Plaintiff testified about text messages defendant sent her calling her a "Jew bag," and a "f****** nasty c***." He also sent her

a "s\*\*\*" emoji. When plaintiff took away one of their daughter's phones as punishment, plaintiff testified that defendant threw lemonade in her face. Plaintiff testified that as a result of defendant's actions, she felt "scared," "intimidated," and "controlled." Plaintiff sought an FRO because she wanted defendant to stop harassing her and wanted to feel secure in her own home.

On cross-examination, plaintiff clarified that she did not list all of the prior incidents of domestic violence in her initial complaint because she thought only the January 24, 2023 incident had to be included. Plaintiff testified that she dismissed the prior TRO and entered into a civil restraints agreement because she was "petrified" of defendant, married to him at the time, and felt she was "still under his control." Additionally, plaintiff explained that she did not report many prior incidents of domestic violence involving defendant because she was afraid her children would be taken away from her.

Defendant testified he did not recall driving at a high rate of speed onto plaintiff's lawn in Winter 2015, and his car was not ruined. He denied waking plaintiff up in bed after midnight and standing over her screaming, claiming it never happened. Defendant testified, "I'm assuming that she dreamed this," because he gets up early for work, and it is not his "character" to act that way.

In terms of prior history, defendant testified that plaintiff "was the aggressor" whenever they had a physical altercation. He denied assaulting plaintiff on Christmas Day in 2013, and testified that plaintiff hit him while he placed his hands "behind [his] back." Defendant stated he told plaintiff to leave marks on him because he was going to report her actions to the police. In response, defendant testified that plaintiff "claw[ed] at [his] face," which drew blood. He stated he drove to the police station in his pajamas.

Defendant denied ever throwing his dinner on the floor. When putting the daughters' belongings in bags on the lawn on Mother's Day, defendant testified he was "disgusted" with plaintiff because she kept them all day. Defendant claimed he "packed their (the children's) stuff in a bag" and left it on his front steps because they needed it for the next day.

When questioned about the January 24, 2023 incident, defendant testified that plaintiff was the aggressor and "[t]he back door [of her house] is always open," which led to an "altercation." According to defendant, plaintiff struck him, and he attempted to leave, but she grabbed him as he was exiting through the door. Defendant testified that plaintiff "tried to shut the [front] gate" to prevent him from leaving with their daughters.

On cross-examination, defendant was questioned about his text messages on the date of the incident regarding one of the daughters staying with plaintiff that night. Defendant was evasive on this topic and started testifying instead about his belief that plaintiff wanted to renegotiate child support. When confronted about a text message from one of the daughters indicating she wanted to see defendant on the day of the incident, but not sleep overnight, he testified he "assume[d]" "[his] daughter could have been told to text that by [plaintiff]." After the judge directed defendant to clarify what the message was and not what defendant assumed it was, he acknowledged the daughter's text message did in fact indicate she wanted to see him that day but not stay overnight at his house.

Defendant added that he sent a text message to his daughter in response stating that she should not come over if she was not going to stay overnight. Defendant was also cross-examined about another text message that he sent to his daughters stating if they came to his house wearing someone else's clothing, he would "take the clothes outside and destroy them." He also texted them that if they didn't take their laundry upstairs, he would throw their laundry "in the garbage."

A-2315-22

Regarding the "beat on the door," defendant testified "the little pane broke," and he repaired it. Defendant stated that plaintiff is usually asleep when he drops off the girls, which is why he has to "beat on the door."

On re-direct examination, defendant testified that he was "sure" plaintiff and her attorney were going to come after him "for adjustments on the child support" after the FRO hearing. Defendant surmised plaintiff was "additionally angry" because the woman he is dating dropped the daughters off at plaintiff's house one night.

After establishing jurisdiction and considering the testimony and evidence, including screenshots of text messages, emails, and the amended TRO, the judge found plaintiff "credible" and did not accept defendant's version of events. In his opinion, the judge found plaintiff's "testimony was not exaggerated," "[i]t was clear and concise," and "the emotions that were demonstrated" comported with the testimony provided.

The judge considered the incident on January 24, 2023, which "originated as a dispute regarding parenting time" and escalated to an "altercation" that became "physical" based on the text message stating one of the daughters did not want overnight parenting time with defendant that day. Addressing the

incident, the judge found defendant "pushed [plaintiff] up against a desk"; "spat" on her; and "pushed [her] down to the ground."

The judge credited plaintiff's testimony about prior acts of domestic violence and noted "some of which can be deemed to be prior acts of domestic violence, some perhaps not." The judge found plaintiff proved the predicate act of assault by a preponderance of the credible evidence under N.J.S.A. 2C:12-1(a)(3), because defendant attempted "by physical menace to put [plaintiff] in fear of imminent serious bodily injury."

The judge then applied the two-prong test under Silver v. Silver, 387 N.J. Super. 112, 125-27 (App. Div. 2006), and concluded plaintiff needed the protection of an FRO. The judge highlighted that where the predicate act of assault—an offense that involves the use of physical force or violence—is found, the issuance of an FRO is "perfunctory and self[-]evident."

Defendant appeals, contending the judge erred in finding plaintiff's testimony credible. Defendant also argues plaintiff did not establish the predicate act of assault or the need for an FRO to protect her from immediate danger of harm and to prevent further abuse. We disagree.

II.

Generally, "findings by a trial court are binding on appeal when supported by adequate, substantial, credible evidence." Gnall v. Gnall, 222 N.J. 414, 428 (2015). "We accord substantial deference to Family Part judges, who routinely hear domestic violence cases and are 'specially trained to detect the difference between domestic violence and more ordinary differences that arise between couples.'" C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020) (quoting J.D. v. M.D.F., 207 N.J. 458, 482 (2011)). "[D]eference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" MacKinnon v. MacKinnon, 191 N.J. 240, 254 (2007) (quoting Cesare v. Cesare, 154 N.J. 394, 412 (1998)).

We will not disturb a trial court's factual findings unless "they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Cesare, 154 N.J. at 412 (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). However, we do not accord such deference to legal conclusions and will review such conclusions de novo. Thieme v. Aucoin-Thieme, 227 N.J. 269, 283 (2016).

The purpose of the PDVA is to "assure the victims of domestic violence the maximum protection from abuse the law can provide." G.M. v. C.V., 453 N.J. Super. 1, 12 (App. Div. 2018) (quoting State v. Brown, 394 N.J. Super. 492, 504 (App. Div. 2007)); see also N.J.S.A. 2C:25-18. Consequently, "[o]ur law is particularly solicitous of victims of domestic violence," J.D., 207 N.J. at 473 (alteration in original) (quoting State v. Hoffman, 149 N.J. 564, 584 (1997)), and courts will "liberally construe[] [the PDVA] to achieve its salutary purposes," Cesare, 154 N.J. at 400.

When determining whether to grant an FRO pursuant to the PDVA, the judge must make two determinations. See Silver, 387 N.J. Super. at 125-27. Under the first Silver prong, "the judge must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19[(a)] has occurred." Id. at 125 (citing N.J.S.A. 2C:25-29(a)).

If the court finds the defendant committed a predicate act of domestic violence, then the second inquiry "is whether the court should enter a restraining order that provides protection for the victim." Id. at 126. While the second prong inquiry "is most often perfunctory and self-evident, the guiding standard is whether a restraining order is necessary, upon an evaluation of the factors set

forth in N.J.S.A. 2C:25-29[(a)](1) to -29[(a)](6), to protect the victim from an immediate danger or to prevent further abuse." Id. at 127.

"[T]he Legislature did not intend that the commission of one of the enumerated predicate acts of domestic violence automatically mandates the entry of a domestic violence restraining order." Silver, 387 N.J. Super at 127. The factors which the court should consider include, but are not limited to:

> (1) The previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse;
>
> (2) The existence of immediate danger to person or property;
>
> (3) The financial circumstances of the plaintiff and defendant;
>
> (4) The best interests of the victim and any child;
>
> (5) In determining custody and parenting time the protection of the victim's safety; and
>
> (6) The existence of a verifiable order of protection from another jurisdiction.
>
> [N.J.S.A. 2C:25-29(a).]

Although the court is not required to incorporate all of these factors in its findings, "the [PDVA] does require that 'acts claimed by a plaintiff to be domestic violence . . . be evaluated in light of the previous history of violence

between the parties.'"  Cesare, 154 N.J. at 401-02 (quoting Peranio v. Peranio, 280 N.J. Super. 47, 54 (App. Div. 1995)).  Whether a restraining order should be issued depends on the seriousness of the predicate offense, on "the previous history of domestic violence between the plaintiff and defendant including previous threats, harassment, and physical abuse," and on "whether immediate danger to the person or property is present."  Corrente v. Corrente, 281 N.J. Super. 243, 248-49 (App. Div. 1995).

The court must also exercise care to "distinguish between ordinary disputes and disagreements between family members and those acts that cross the line into domestic violence."  R.G. v. R.G., 449 N.J. Super. 208, 225 (App. Div. 2017).  The PDVA is not intended to encompass "ordinary domestic contretemps."  Corrente, 281 N.J. Super. at 250 (emphasis added).  Rather, "the [PDVA] is intended to assist those who are truly the victims of domestic violence."  Silver, 387 N.J. Super. at 124 (quoting Kamen v. Egan, 322 N.J. Super. 222, 229 (App. Div. 1999)).  The second Silver prong "requires the conduct must be imbued by a desire to abuse or control the victim."  R.G., 449 N.J. Super. at 228 (quoting Silver, 387 N.J. Super. at 126-27).

Applying these principles, we conclude there is no basis to disturb the judge's factual findings or legal conclusions.  He had the opportunity to hear and

14

consider the testimony of the parties and plaintiff's evidence and assess the parties' credibility based on believability and demeanor. His factual findings are supported by substantial credible evidence, and those facts were correctly applied to the law.

The judge found plaintiff's testimony was corroborated by the text messages between the parties—and defendant and their daughter—to establish plaintiff's version of events. The judge found she met her burden of proof to establish defendant committed the predicate act of assault. Defendant points to no evidence in the record that undermines the judge's findings. We discern no error.

The judge determined that plaintiff proved the predicate act of simple assault, N.J.S.A. 2C:12-1(a), which provides:

> A person is guilty of assault if the person:
>
> (1) Attempts to cause or purposely, knowingly or recklessly causes bodily injury to another; or
>
> (2) Negligently causes bodily injury to another with a deadly weapon; or
>
> (3) Attempts by physical menace to put another in fear of imminent serious bodily injury.

"Bodily injury is defined as 'physical pain, illness or any impairment of physical condition.'" State ex rel. S.B., 333 N.J. Super. 236, 242 (2000) (quoting

N.J.S.A. 2C:11-1(a)). "Not much is required to show bodily injury. For example, the stinging sensation caused by a slap is adequate to support an assault." State v. Stull, 403 N.J. Super. 501, 505 (App. Div. 2008) (quoting N.B. v. T.B., 297 N.J. Super. 35, 43 (App. Div. 1997)). "[P]hysical discomfort, or a sensation caused by a kick during a physical confrontation, as well as pain, as that word is commonly understood, is sufficient to constitute bodily injury for purposes of a prosecution for a simple assault." S.B., 333 N.J. Super. at 244. Here, defendant's shoving plaintiff to a desk and to the ground and spitting in her face is a bodily injury for purposes of assault under N.J.S.A. 2C:12-1(a)(3).

The judge evaluated defendant's conduct "in light of the previous history of violence between the parties." Silver, 387 N.J. Super. at 125-26 (quoting Peranio, 280 N.J. Super. at 54). The judge noted plaintiff previously obtained a TRO against defendant but dismissed it during the FRO trial in favor of entering a civil restraints agreement. The amended TRO alleged an extensive history of domestic violence.

Plaintiff testified defendant assaulted her in the past, and he did not rebut her testimony on this issue. The judge found plaintiff was pushed up against a desk, spat at, and pushed to the ground by defendant. These findings are sufficiently supported in the record.

A-2315-22

Defendant claims plaintiff testified she had a red mark on her arm from the assault but no other marks or bruises, which he contends is required to establish an assault. We disagree. Plaintiff testified she experienced pain in her arm as a result of the assault. "Even the slightest physical contact, if done intentionally, is considered a simple assault under New Jersey law." State v. Bozin, 912 F. Supp. 106, 115 (D.N.J. 1995). No physical manifestation of an injury is required. N.B., 297 N.J. Super. at 43.

Defendant also contends plaintiff was not credible because she dismissed her prior TRO during the parties' divorce proceeding, entered into a civil restraints agreement, and indicated on the record she was not afraid of him. But plaintiff testified in the matter under review that she dismissed the prior TRO and entered into the civil restraints agreement because she was afraid since she was still married to defendant and felt she was under his control. Plaintiff maintained that she thought by doing "everything [defendant] wanted [her] to do and sign[ing] everything that he wanted [her] to sign, that he would stop" his abuse.

Here, the judge correctly determined that any differences between the testimony given by plaintiff in the prior FRO hearing and her present testimony did not adversely impact her credibility. In particular, the judge emphasized

that victims experience the "cycle of domestic violence" and feel pressured to dismiss TROs and enter civil restraints out of fear, even though plaintiff previously testified that she was not coerced into doing so. The judge explicitly found plaintiff was physically harmed by defendant and highlighted her continuing fear of him.

We conclude the judge correctly determined defendant's egregious act of assaulting plaintiff supported the issuance of an FRO. In sum, plaintiff presented sufficient credible evidence to support both <u>Silver</u> prongs, and under the totality of the circumstances, we see no evidentiary errors, oversight, or abuse of discretion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2315-22