221 N.J. Super. 219 (1987)
534 A.2d 83
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
CARLA CANTOR, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 2, 1987.
Decided November 23, 1987.
*220 Before Judges PETRELLA, DREIER and ASHBEY.
*221 Frederick L. Whitmer argued the cause for appellant (Pitney, Hardin, Kipp & Szuch, attorneys; Frederick L. Whitmer, Sean R. Kelly and Ernest J. Cicconi, on the brief).
Robin Parker, Deputy Attorney General, argued the cause for respondent (W. Cary Edwards, Attorney General of New Jersey, attorney; Robin Parker, of counsel and on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
Defendant appeals from a conviction of impersonating a public official, N.J.S.A. 2C:28-8. She was acquitted of unauthorized disclosure of juvenile records, N.J.S.A. 2A:4-65d (now N.J.S.A. 2A:4A-60f). Her conviction turned upon a single credibility determination. When defendant, a newspaper reporter, interviewed the mother of a homicide victim, defendant is alleged to have identified herself as a county official, a lady "from the morgue," and then asked personal questions concerning the decedent, her family and her habits. Defendant denied these allegations, contending that she had properly identified herself as a reporter when she obtained the interview.
Defendant had initially been tried in September 1983 and found guilty by a municipal court judge. She was fined $500, assessed a $25 Violent Crimes Compensation Board penalty, and ordered to perform 30 days of community service. On appeal to the Law Division, after a trial de novo on the record, she was again found guilty and the same sentence was imposed. While an appeal was pending before this court, defendant moved before the Law Division to vacate her conviction and for a new trial based on newly discovered evidence. The new trial was granted by the Law Division based upon the prosecution's failure to disclose evidence favorable to the accused, and the appeal was dismissed without prejudice. Upon retrial before a different municipal judge, defendant again was found guilty on the impersonation charge and again appealed to the Law Division. The Law Division ordered disclosure to defendant of non-privileged matters in the file of the original prosecuting *222 attorney, who had been privately retained pursuant to R. 7:4-4(b) (the attorney having been retained by the family of the decedent with the expectation that the municipal court proceeding would provide discovery for an anticipated civil suit). The Law Division also remanded the matter to the municipal court for further proceedings including a new trial if necessary.
The parties then filed cross-motions for leave to appeal to this court. We granted both parties' motions and ordered the Law Division judge to make an in camera inspection of the former prosecutor's file to determine whether any material contained therein was subject to a work product privilege. We further directed that the defendant could thereafter move for a supplementation of the record, a judgment of acquittal or a new trial. If further proceedings were required, the proceedings should be conducted in the Law Division in any manner appropriate to conclude a de novo trial; then a final judgment should be entered.
On defendant's motions for a directed verdict of acquittal or a new trial, Judge Burton Ironson in the Law Division entered an order vacating defendant's judgment of conviction, denying defendant's motion for a verdict of acquittal, and ordering a de novo plenary trial to be held before him. Defendant was retried, and on August 18, 1986, Judge Ironson rendered an oral opinion in which he found defendant guilty of the impersonation charge and reimposed the original sentence.
At oral argument in this appeal, defendant's attorney noted that no error has been alleged with respect to the trial held by Judge Ironson. On appeal, however, defendant raises two points, with many subpoints:
POINT I

N.J.S. 2C:28-8 must be interpreted to avoid infringing provisions of the federal and state constitutions which shelter newsgathering activity from governmental intrusion.
A. The New Jersey and United States Constitutions protect newsgathering activity.

*223 B. The statute must be interpreted so that it will not intrude into areas protected by the First Amendment, particularly because there is no evidence that the Legislature intended to apply the statute to the press.
C. A heightened standard of review of the record is constitutionally required.
D. The statute in this case was utilized illegitimately to punish the press, without appropriate procedural and substantive safeguards.
E. The need either to free journalists from the fear of prosecution or to increase safeguards stems from the fact that the statute has in this case and will in the future be too easily abused.
POINT II
Defendant was denied due process of law because material which should have been produced before the first trial was not produced until two defective trials had been conducted.
A. The state's withholding of the Brady materials impermissibly restricted and fatally delayed defendant's ability to obtain a fair trial.
i. By withholding the Brady materials, the state forbade defendant from confronting the prosecution witnesses at the earlier trials with inconsistencies in their testimony and enabled the prosecution witnesses to homogenize their testimony by the time of the third trial.
ii. The inability of the defendant to effectively sequester the state's witnesses renders the judgment of conviction invalid.
B. Only acquittal fully vindicates defendant's constitutional rights.
We find that the points raised by defendant are clearly without merit, R. 2:11-3(e)(2), and, therefore, we will only briefly comment on the points raised.
N.J.S.A. 2C:28-8 clearly interdicts the behavior alleged to have been exhibited by defendant. The statute provides that a person commits a disorderly persons offense
if he falsely pretends to hold a position in the public service with purpose to induce another to submit to such pretended official authority or otherwise to act in reliance upon that pretense.
While defendant has attempted to wrap herself in the constitutional cloak of press freedom, the rights of the press do not exist in a vacuum. A pressperson has no special immunity from the application of general laws and no special privilege to invade the rights and liberties of others. Curtis Pub. Co. v. Butts, 388 U.S. 130, 150, 87 S.Ct. 1975, 1988, 18 L.Ed.2d 1094, 1108 (1967), reh. den. 389 U.S. 889, 88 S.Ct. 11, 19 L.Ed.2d 197 (1967). In State v. Lashinsky, 81 N.J. 1 (1979), it was clearly established that members of the press have some special newsgathering *224 rights which must be respected by government. Id. at 14. Yet the court noted:
In this framework, a balancing of competing values is required in order to assess the reasonableness of a criminal statute or governmental sanction as applied to a member of the press engaged in his profession. The Constitution does not serve to place the media or their representatives above the law. They are subject to law, as any citizen. The converse proposition would be intolerable. But, the status of an individual as a newsperson seeking news is a weighty factor in the equation for applying the law's strictures. [Ibid.]
In the case before us, defendant's status as a newsperson cannot protect her from the application of the criminal laws forbidding the false impersonation of a public official. This is so especially where defendant's alleged deceit was practiced upon an individual who was particularly vulnerable by virtue of her daughter's death and the surrounding circumstances. See Branzburg v. Hayes, 408 U.S. 665, 691-692, 92 S.Ct. 2646, 2661-2662, 33 L.Ed.2d 626, 645-646 (1972). The First Amendment has never been construed to provide immunity from either tortious or criminal conduct committed in the course of newsgathering; it provides no license to trespass, steal or surreptitiously intrude into another's home or office. See generally Annotation, "First Amendment as Immunizing Newsman from Liability for Tortious Conduct while Gathering News," 28 A.L. R.Fed. 904, 905 (1976).
At oral argument defendant stressed that there should be a "heightened standard of review" in a case such as this, and that a similar "heightened standard" should have been applied by the trial judge in viewing the evidence. From our view of the record, there is no question that Judge Ironson had an ample basis in this record to convict defendant. He applied the "beyond a reasonable doubt" standard required in a criminal case, one of the three standards permitted under New Jersey law. Evid.R. 1(4). Other than the constitutional treason requirement of proof by "Testimony of two Witnesses to the same overt Act, or on Confession in open Court," U.S. Const., Art. III, § 3, claimed by defendant as precedent for imposing a higher standard where constitutional values are implicated, we *225 know of no basis to impose a standard of proof more stringent than conviction beyond a reasonable doubt.
We further reject defendant's assertion that where a newsperson's actions are called into question we should engraft upon N.J.S.A. 2C:28-8 the additional requirement that the defendant be motivated by actual malice. This was not a civil libel action, but rather a criminal trial. In a criminal case, the State's burden is greater than the clear and convincing evidence standard of proof in a libel case. Dairy Stores, Inc. v. Sentinel Publishing Co., Inc., 104 N.J. 125, 155 (1986). There is also no requirement that defendant be motivated by personal gain, although the enhancement of her professional reputation for the "scoop" might lend some aura of individual aggrandizement to this offense. The State had to prove beyond a reasonable doubt that defendant had the purpose to induce another to submit to her pretended official authority. By requiring proof of this beyond a reasonable doubt, defendant was given more protection than any civil libel defendant.
Defendant's second main point is that her due process rights were violated by virtue of the three trials held in this matter. There is simply no support for the argument that upon violation of one's constitutional rights an acquittal rather than a new trial must be ordered as the sole appropriate remedy. The general rule calls for a new trial rather than a judgment of acquittal, even where constitutional rights are implicated. State v. Croland, 31 N.J. 380, 384 (1960); State v. Lutz, 149 N.J. Super. 470, 474 (App.Div. 1977).
The materials withheld from defendant but later supplied to her counsel, to the extent that they were inconsistent with the family's testimony, gave defendant an opportunity for cross-examination after the witnesses had testified without being faced with that information in prior trials. Inconsistencies, if material, would then be apparent to the trial court. It could be well argued that the retrials gave defendant more of a chance to impeach the credibility of the State's witnesses than she would *226 have had if all of the information initially had been available. We determine that any prejudice which occurred by virtue of the violation of defendant's constitutional rights during either of the first two trials was adequately cured by the conduct of the trial before Judge Ironson.
Affirmed.