# RECORD IMPOUNDED

### NOT FOR PUBLICATION WITHOUT THE
### APPROVAL OF THE APPELLATE DIVISION

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4406-17T2

IN THE MATTER OF THE
COMMITMENT OF C.R. and K.L.[1]

_____

Submitted May 1, 2019 - Decided June 24, 2019

Before Judges Koblitz, Currier and Mayer.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Municipal Appeal No. 130417.[2]

Joseph E. Krakora, Public Defender, attorney for appellants C.R. and K.L. (Rihua Xu, Assistant Deputy Public Defender, on the briefs).

Robert E. Barry, Union County Counsel, attorney for respondent County of Union (Moshood Muftau, Second Deputy County Counsel, on the briefs).

---

[1]  We use initials to preserve the privacy of individuals involved in civil commitment proceedings.  R. 1:38-3(f)(2).

[2]  A Superior Court order was signed by a municipal court judge pursuant to N.J.S.A. 30:4-27.2(f), which defines "court" as the Superior Court or a municipal court, and N.J.S.A. 30:4-27.12 and N.J.S.A. 30:4-27.16, which grant authority to the "court" in civil commitment proceedings.  We indicate that this appeal is from the Law Division to be consistent with the order as it was entered.

PER CURIAM

C.R. and K.L., patients committed and then released prior to the filing of this appeal, appeal from the April 19, 2018 order denying their motion to disqualify Union County Counsel from acting in the capacity of the county adjuster in civil commitment hearings. We sua sponte granted leave to appeal this interlocutory order. Given the limited record presented, we determine that leave was improvidently granted and dismiss the appeal.

Although the patients have since been released from Cornerstone Behavioral Health Hospital of Union County (Cornerstone), this matter is not moot. In re Civil Commitment of C.M., ___ N.J. Super. ___, ___ (App. Div. 2019) (slip op. at 6-8). The record, however, is not sufficiently robust to review the patients' allegations.

Patients' counsel alleges in his brief that during civil commitment hearings, he raised concerns during "multiple off-record conversations with the judge" regarding "limited cooperation and in some cases all out refusal of Cornerstone personnel to discuss their patients' cases with the [public defender's] investigators and their assigned counsel." The commitment transcript where this arose has not been provided. At a hearing on March 13, 2018, patients' counsel again raised concerns "off record" regarding "the legality

A-4406-17T2

of recent conduct of Cornerstone employees," and brought to the attention of the court a March 12, 2018 memo by the chief psychiatrist at Cornerstone.

Contrary to Rule 2:5-4 because it is not a part of the record in the trial court, nor the subject of a motion to expand the record, Rule 2:5-5(b), patients' counsel improperly included the memo in his appendix. We reproduce the chief psychiatrist's memo to provide some context for what appears to be the genesis of this dispute. The March 2018 memo addresses Cornerstone employees' interaction with lawyers representing patients and reads:

> 1) Lawyers and their staff will be assigned a room to see patients.
>
> 2) Lawyers and their staff will be provided one chart at a time.
>
> 3) Cornerstone staff shall not be required to discuss patients with the lawyers and their staff.
>
> 4) Once the court session is over and the judge has left, the lawyers shall leave the room.
>
> 5) If lawyers have pending work related to their patients, they will be assigned a room to complete their work; they are requested not to remain in the facility to complete private business.

Following the hearings, patients' counsel served subpoenas on two social workers and a psychiatrist from Cornerstone who had been witnesses, seeking to question them at a deposition regarding alleged misconduct. County counsel

filed a motion to quash the subpoenas.[3]  Patients' counsel then filed a motion to disqualify county counsel.

At the argument on the disqualification motion, patients' counsel alleged that K.L. had unnecessarily been required to stay an additional three days in the hospital based on misinformation regarding the availability of housing.  Patients' counsel based its disqualification motion on county counsel's motion to quash subpoenas.[4]  County counsel argued it opposed the depositions based on its belief that depositions were not permitted in commitment hearings.  During oral argument before the motion court, patients' counsel read an assertion from county counsel that it represented the individual Cornerstone witnesses in the motion to quash.

Analogizing an attorney in a commitment proceeding to a prosecutor in a criminal proceeding, patients' counsel sought the removal of county counsel, arguing that "both of those issues deal with the government in representation of the people regarding a liberty interest, the highest stake that there is."  Patients' counsel cited New Jersey v. Imperiale, 773 F. Supp. 747, 750 (D.N.J. 1991) (stating "absence of an impartial and disinterested prosecutor has been held to

---

[3]  A disposition on the motion to quash is not included in the appellate record.
[4]  Only the cover letter of that motion is included in the appellate record.

A-4406-17T2

violate a criminal defendant's due process right to a fundamentally fair trial") and <u>Young v. United States ex rel. Vuitton Et Fils S. A.</u>, 481 U.S. 787, 790, 804 (1987) (holding a private attorney "for a party that is the beneficiary of a court order may not be appointed to undertake contempt prosecutions for alleged violations of that order").[5]

The municipal court judge denied the motion to disqualify county counsel because she found no concurrent conflict of interest. <u>See</u> Rules of Professional Conduct, Pressler & Verniero, <u>Current N.J. Court Rules</u>, Appendix to <u>R.</u> 1:14, www.gannlaw.com (2019) (stating a lawyer shall not represent a client if "there is a significant risk that the representation of one or more clients will be

---

[5]  The United States Supreme Court in <u>Young</u> found a conflict rendered the private attorney's representation improper because:

> forced immersion in criminal investigation and adjudication is a wrenching disruption of everyday life. For this reason, we must have assurance that those who would wield this power will be guided solely by their sense of public responsibility for the attainment of justice. A prosecutor of a contempt action who represents the private beneficiary of the court order allegedly violated cannot provide such assurance, for such an attorney is required by the very standards of the profession to serve two masters.

> [481 U.S. at 814.]

materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer").

Patients' counsel asks this court to reverse the municipal court's decision and approve his proposed order, captioned "IMO the Commitment of C.R., et al.,"[6] and submitted with his motion to (1) disqualify the Union County Counsel's Office "as attorneys for Cornerstone" and "as attorneys for all past, present, and future employees, contractors, and affiliates of Cornerstone," and (2) "enjoin[]" county counsel "from acting in the capacity of the county adjuster for the purposes of civil commitment hearings."

It is common in civil matters for parties' lawyers to litigate the need for witness depositions, including motions to quash. See, e.g., R. 4:14-7 (establishing the procedure for compelling depositions through subpoena including, under subsection (c): "if the deponent is notified that a motion to quash the subpoena has been filed, the deponent shall not produce or release the subpoenaed evidence until ordered to do so" by court order or by consent of all parties).

"The county adjuster shall be responsible for commitment, admission,

---

[6] The Division of Mental Health Advocacy has the statutory authority, "with the approval of the Public Defender," to represent individuals "as a class on an issue of general application . . . ." N.J.S.A. 52:27EE-31.

review and discharge of persons receiving [Division of Mental Health Services] services, including those receiving services from county psychiatric facilities." N.J.A.C. 10:7-3.1(a). If licensed to practice law, the county adjuster shall "present the case for the client's involuntary commitment to the court." N.J.A.C. 10:7-3.1(c)(6). County counsel should present involuntary commitment matters if the county adjuster is not licensed to practice law. N.J.S.A. 30:4-27.12(b). County counsel represented to the motion court that his office did so in cases such as "emergencies, health considerations, vacations and conflict[ing] schedules." He said county counsel handles about twenty percent of the commitment hearings, and:

> only deal[s] with the presentment of a hearing. We do not deal with any of the financial considerations relative to a patient's commitment. . . . the [a]djuster's [o]ffice is full[y] staffed . . . and . . . work[s] on all the administrative tasks and all of the settlement that's required by statute.

Patients' counsel argues Cornerstone has a financial interest in committing patients to its facility, and thus Cornerstone employees are not able to provide objective opinions. Patients' counsel also contends Cornerstone is a "bottom-line driven entity," and that Union County and Cornerstone's fiscal interests pose a conflict. Contrary to Rule 2:5-4, patients' counsel impermissibly provides Cornerstone's 2014 press release describing how the county sought:

7

ways to reduce costs and enable [Cornerstone] to react to a changing health-care environment by determining if and how [Cornerstone] operations could continue in the present environment and the future in light of the anticipated reduction in the Medicare/Medic[aid] reimbursements and increases in the County's subsidy of [Cornerstone].

[County of Union Completes Sale of Runnells Specialized Hospital to Center Management; Leases Back Cornerstone Psychiatric Unit, Union County New Jersey (Dec. 15, 2014), http://ucnj.org/press-releases/public-info/2014/12/15/county-of-union-completes-sale-of-runnells-specialized-hospital-to-center-management-leases-back-cornerstone-psychiatric-unit/.]

The press release further describes Union County's eventual decision to "lease back" Cornerstone. Ibid.

We disregard the press release and the memo addressing Cornerstone staff's interaction with patients' lawyers because neither document is properly before us. Neither was presented to the municipal court judge who decided the motion to disqualify county counsel, R. 2:5-4, nor did patients' counsel file a motion to expand the record on appeal, R. 2:5-5(b). Based on the limited record before us, we cannot review the issues raised by patients' counsel. We therefore reconsider our grant of leave to appeal and dismiss this interlocutory appeal.

Dismissed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4406-17T2